## The DELAWARE Insurance Company *against* ARCHER and Others.

The plaintiffs loaned in *Philadelphia* to the defendants, seventeen thousand dollars on *respondentia*, by the ship *Juniata*, at and from *Liverpool* to *Canton*, and thence to *Philadelphia.* No *respondentia* bond was executed at the time, as the shipment was to be made at *Liverpool*, and it was uncertain whether it would be in specie or goods, but it was to be given subsequently, and in the mean-time, an agreement was made by the parties, that bills of lading outward at *Liverpool* for seventeen thousand dollars, if *specie* should be shipped, or for twenty thousand dollars, value of goods at par, if specie should not be shipped; ("in which case the lenders should only be liable to average and entitled to salvage, *as if it had been a specie shipment*;") and also, bills of lading of the returns at *Canton*, should be assigned to the lenders, as collateral security for the bond to be given. The vessel sailed from *Liverpool* with seven hundred pieces of goods to the value of twenty thousand dollars, but without specie, and she was immediately afterwards stranded and lost; in consequence of which, forty-five of the seven hundred pieces were totally lost, and six hundred and fifty-five saved, but in a damaged condition. *Held*, that the plaintiffs were not liable for the *damage* of the goods saved, but only for the part totally lost; the meaning of the agreement being, that they should be exempt from damage, as they would have been, if specie had been shipped.

THIS action was brought in this court by the *Delaware* Insurance Company, against *Samuel Archer* and others, to recover a sum of money claimed to be due on a *respondentia* contract, upon the true construction of which the decision of the cause depended, the facts being undisputed.

On the 23d of *September*, 1825, the parties agreed in writing, that the plaintiffs should loan to the defendants seventeen thousand dollars on *respondentia*, for the voyage of the ship *Juniata, Keck,* master, at and from *Liverpool* to *Canton*, and thence to *Philadelphia*, at the premium of eleven per cent., and half per cent. per month additional, for any time the voyage might be longer than one year from the shipment, and date of the bills of lading at *Liverpool*, and until which time legal interest was to be paid on the receipt of the bills of lading, when they were to be assigned.

They also agreed, "that the bills of lading outward at *Liverpool*, for seventeen thousand dollars, in specie, if specie is shipped, or for twenty thousand dollars value of goods, at par, if specie is not shipped, (in which case the company shall only be liable to average, and entitled to salvage, as if it had been a specie shipment,) and the returns or investment thereof at *Canton* or elsewhere, amounting to seventeen thousand dollars, are to be assigned to the *Delaware* Insurance Company of *Philadelphia*, and that the supercargo or consignee will be directed to consign the said returns or investment to the *Delaware* Insurance Company of *Philadelphia*, and forward original and duplicate bills of lading and invoices, under sealed covers, addressed to the said Company, as a collateral security for the payment of the bond to be given by the said *Samuel Archer*," &c.

A shipment of seventy bales of dry-goods, was made by the de-

(Delaware Insurance Company *v.* Archer and others.)

fendants from *Liverpool,* in conformity with this agreement, by bill of lading dated *November* 16th, 1825, the invoice amounting to four thousand four hundred and forty-six pounds eleven shillings, sterling.

On the 30th of *November,* 1825, the ship *Juniata* sailed from *Liverpool* on her voyage to *Canton,* with the said goods on board, and on the next day was utterly lost by the violence of a storm on the coast of *Ireland.* Six hundred and fifty-five pieces out of seven hundred pieces of which the said invoice was composed, were specifically saved from the wreck, but greatly damaged, and the nett salvage which they produced at *Liverpool,* was seven hundred and forty-six pounds fifteen shillings, sterling.

If specie had been shipped, as the witnesses swore, it would have been stowed under the ballast, which was entirely lost at sea, when the ship struck on the first reef of rocks, and her bottom was beaten out; after which she beat along the rocks for two or three miles. The only specie on board was stowed under the ballast, and entirely lost.

It appeared, that it was part of the condition of the *respondentia* bonds in use in the *Delaware* Insurance Office, that the borrower is to account for " a just or proportionate average or salvage of the goods shipped, and which shall not be unavoidably lost by fire, enemies, men of war, or any other casualties."

A verdict was taken by consent for eighteen thousand eight hundred and sixty-five dollars and nine cents, subject to the opinion of the court upon the whole evidence. If the court should be of opinion that the plaintiffs were entitled to recover without being liable for damage sustained by the defendants' goods, judgment was to be entered for the plaintiffs for the above sum. If the court should be of opinion that the plaintiffs were entitled to recover on the principle of liability for said damage, judgment was to be entered for the plaintiffs for four thousand four hundred and thirty dollars and fifteen cents; and if the court should be of opinion that the plaintiffs were not entitled to recover, then judgment was to be entered for the defendants; any errors in calculation to be corrected by the parties. The court was to have power to award a new trial, or appoint referees to settle the calculations, if they should think fit.

The plaintiffs claimed the salvage of the goods, as if saved free from damage, but allowing for the total loss of the part lost; that is, six hundred and fifty-five seven hundredths of seventeen thousand dollars, less the expenses of general average, which was two and one hundred and sixty-four one thousandths per cent. on the cargo, with the difference of exchange, and interest from the 29th of *June,* 1826.

The defendants alleged, that the plaintiffs were entitled to recover no salvage, or if any, only the actual salvage of the goods, according to their depreciated value, after they were recovered from the ship, damaged by the perils of the sea.

*Binney* for the plaintiffs. This case depends on the construction of a memorandum of an agreement, intended to be reduced to a re-

gular *respondentia* bond, which was to have been given when the bill of lading of the shipment at *Liverpool*, should be received by the borrowers in *Philadelphia*, but which was prevented by loss. In the event of goods and not specie being shipped, the company were " *only to be liable for average, and entitled to salvage, as if it had been a specie shipment.*" These are the words to be interpreted. It is to be inferred, that a specie shipment was contemplated, in which case, the loan was to be on its precise amount; but if goods were shipped, the amount of the security was to be increased to twenty thousand dollars. The memorandum contemplated the usual course of *respondentia* loans on shipments from *Philadelphia* to *Canton* and back, which is on specie out, and on goods home. The memorandum as to the specie risk is applicable only to the outward voyage. The returns at *Canton*, amounting to seventeen thousand dollars, were to be the security home, and the memorandum is not applicable to them. The intention was to put upon the company a specie risk out, and a merchandise risk home.

The memorandum is capable of three interpretations only. 1. That the whole effect and intention of it was to protect the company from *damage* on the outward voyage. 2. That it was intended to substitute an imaginary for a real adventure, and to make the company liable accordingly as it might be conjectured, that the imaginary adventure would have fared in the events that have happened. 3. That it was intended to consider the goods identically as specie, and to treat all the loss that happened to the goods, as having happened to specie. The first is the interpretation of the plaintiffs. The second deprives the plaintiffs of all salvage; it being conjectured, that if specie had been shipped, it would have been all lost. The third construction makes the plaintiffs liable for damage as in the case of goods, and entitles them to the salvage.

The first is the true construction. The sole intention of the agreement was to secure the company from damage, which is not incident to a specie shipment. There are two kinds of loss; total and partial, and two kinds of partial loss; total loss of a part, and damage or injury, either to part, or the whole. The terms, *average loss,* used in the memorandum, are applicable only to a partial, and not to a total loss. The intention of this clause in *respondentia* bonds, is to make the lenders liable for partial loss, which they would not otherwise be. *Phill. on Ins.* 369, *note* (a.) 375. *Park. on Ins.* 132. 2 *Marsh. on Ins.* 760. To what kind of particular average then is merchandise liable, to which specie is not? It is impossible to suggest an injury, to which one is liable, and not the other, except *damage.* The phrase then, " *liable to average as if it were a specie shipment,*" means liable to such average as specie is liable to, and not to average arising from damage, to which specie is not liable. This construction of the memorandum assimilates the contract to a *respondentia* loan on specie out, and goods home, which was the common contract of the company. They are liable to a total loss of part, as well as of the

(Delaware Insurance Company *v.* Archer and others.)

whole, but not to damage, which in the ordinary shipment, they can never incur on the outward voyage. From this it was the intention of the memorandum to protect the company, if goods should be shipped, instead of specie. The premium or marine interest was governed by it. By giving the borrower the option of shipping goods instead of specie, the company did not mean to subject themselves to one species of particular average, viz. *damage*, which is not incident to a specie shipment. The plaintiffs' construction is to be preferred to any other, also, because it renders the contract certain and free from all difficulty, either as to the rule or the application of the rule. This case shows the truth of the remark. The goods were in part lost, and in part damaged. Of the seven hundred pieces shipped, six hundred and fifty-five were saved, but in a damaged state. If the company are free from damage, then forty-five seven hundredth parts are lost, and for this average they are liable, while six hundred and fifty-five hundred parts are more or less damaged, for which they are not answerable. The general average or expense of saving being applicable to specie as well as to goods, they are answerable for that also. Many other cases of a similar kind may be imagined. The construction now contended for is further recommended, by being just between the parties. No premium being paid, except on a specie shipment, there would be injustice in permitting the defendants to throw upon the company a loss by damage, when they have received no consideration for such a risk.

To support the interpretation, that it was intended to substitute an imaginary for a real adventure, the argument is, that the company agreed to pay any loss, that would have happened to specie, if specie had been on board, and as it would have been lost altogether, had it been shipped, the company are bound to stand by a total loss, and are entitled to nothing, while the borrowers are to keep all that was saved. To this interpretation, there are many objections. In the first place, it converts the contract into a pure wager. The supposed fate of an adventure, which never existed, is to decide the fate of the contract. That supposed fate is to be ascertained, not by evidence, but by conjecture, or presumptions, derived from what has happened to another adventure. According to this interpretation, whatever would have hurt specie, shall be deemed to have hurt the goods, and what would not have hurt specie, shall be deemed not to have hurt the goods, and by this criterion the liability of the company is to be determined. The consequences of such a rule, both to the borrower and the lender, would be highly injurious and unjust. Specie cannot be burnt. Suppose the goods are all destroyed by fire, then, because, if instead of goods, specie had been on board, it would not have been burned, the goods are to be considered as not burned. The company lose nothing, and the borrowers are bound to pay. On the other hand, goods are not likely to be taken by pirates at sea, and specie is. A pirate takes all the specie on board, and leaves the goods. In this event, the goods are to be considered

as piratically taken, and the borrowers are discharged, though they have all their goods in safety. A *jettison* takes place, and bulky goods are thrown overboard, but no specie; but according to this construction, if the value of the goods had been in specie, it would have been safe, and consequently the lenders are not answerable. Thus there is a complete substitution of fiction for fact.

If evidence be applied to any thing but the very case to be proved, it does not deserve the name of evidence. It is guessing what would have happened to one thing, from what has happened to a different thing.

The witnesses swear, that *if* specie had been shipped, it would have been stored in the run, and *if* it had been placed in the run of the *Juniata*, it would have been lost, because the specie that was on board was placed there, and was lost. Here then are two *ifs*, which take away the character of evidence, the object of which is to establish facts, that have occurred, and not what never did occur. Such proof establishes no fact, but a probability, that something different from what did happen, would have happened, if another state of things had existed. A probability is not a fact, but the chance of a fact. If the specie had been on board, it might not have been placed in the run, and then the whole theory fails. If it had been there, and the seventy bales of goods had not been on board, the ship might have been saved. She might have obeyed her helm better; she might have been lighter, and gone over the rock; it might have affected her sailing, and carried her on at a different time of tide, earlier or later. It is impossible to say, to what conjecture may lead, and it is impossible gravely to suppose that the parties entered into such a contract, to be decided by such evidence. The construction now under consideration takes from the contract the character of indemnity altogether, making the company lose their money, when the thing pledged is wholly safe, and the borrower pay, when it is wholly lost. It misconceives the terms, as well as the design of the memorandum. It leaves total losses exactly as they would stand without it. The total loss of the goods by fire discharges the loan, because it is to be borne by the lender as a *respondentia* on goods. So of a *jettison*, and the like. This conclusively proves, that it was not intended to make the possible fate of an imaginary adventure the guide in determining the responsibility of the company. It is certain, that they were to be liable for all losses, except average losses, according to the fate of the very goods.

The third interpretation which has been suggested, which considers the goods as identically specie, and treats all the loss which happened to the goods as having happened *to* specie, is obnoxious to objections no less strong. It makes the whole memorandum useless. If the injury to the goods was to be the rule, it was unnecessary to say any thing about a specie shipment. If there had been no reference to specie, the company must have borne loss by damage as well as all other losses. By this reference to specie, the intention must

have been to qualify the claim on goods, but the interpretation now under consideration, supposes that the claim on goods is not affected by the reference to specie. This interpretation is a mere fancy. To suppose that goods are specie, and that as specie they are damaged, is not only a double fiction, but an absurdity. It would be better to say, that the reference to specie has no meaning whatever, and must therefore be struck out of the contract. This however cannot be done, if the court can extract a meaning. Both parties certainly had a meaning, which was to exempt the company from an average loss, or damage, to which specie is not subject, and goods are. This construction places on the borrower one particular risk of goods, that of damage, because he has paid no premium for it, and has for his own interest shipped goods instead of specie, according to the practice.

*Price.* and *Chauncey* for the defendants.

1. By the clause which gives a peculiar character to this agreement for a *respondentia* loan, " the company shall *only* be liable to average and entitled to salvage, as if it had been a specie shipment." Goods were shipped and lost under circumstances which would have produced no salvage. By the terms of the agreement, therefore, it is clear, that the plantiffs cannot recover any salvage. It is not allowable to interpret that which is clear and needs no interpretation. But if there is to be an interpretation of an ambiguous contract, it must be most strongly against the party who uses the language to be interpreted. The clause in question was introduced by the company to save themselves from the losses peculiar to goods, such as sea damage, &c.; but while they cast upon the defendants losses of this description, by making themselves liable to average only as if it were a specie shipment, on the other hand, they conceded to the borrowers the advantages of safety peculiar to goods, by being entitled to salvage, only as if it were a specie shipment. They must consider it throughout as a specie shipment. They cannot consider the shipment as goods for the sake of saving them from the sea, and then as specie, to escape liability for sea damage to goods. Here is the fallacy of the opposite argument. If specie had been shipped, there would have been no salvage at all. Yet on the actual salvage of goods, produced only because the shipment was of goods and not of specie, it asserts a claim, as if the goods specifically saved were saved clear of sea damage, because specie would not have sustained sea damage. This is building a superstructure without a foundation, as there would have been no salvage of specie. It is an effort to engraft a living branch on a dead trunk. That the actual safety to specie, would afford the standard of adjustment of a partial loss, is proved by considering the case of a shipment partly of specie and partly of goods, and a partial loss of specie to a greater or less extent than of goods, in which case, the whole loss would be adjusted according to the loss of the specie; and the entire loss of specie, cannot

vary the principle. They cannot consider the shipment as goods to keep them from sinking, and as specie to escape sea damages, but must treat it as one or the other, throughout. What would have been the fate of specie, if it had been on board, the testimony leaves no doubt. Be that as it may, it is for the plaintiffs to prove, that there would have been salvage of specie to entitle themselves to recover on this contract, and of this they have not given a particle of evidence. The terms of the contract impose this obligation upon them, and to the strict terms of their contract they are held by the authorities in analogous cases. In *Cook* v. *Jennings*, 7 *T. R.* 381, there was an express covenant to pay freight on delivery at *Liverpool.* The ship was wrecked at *B.,* and the goods accepted there by the consignee. *Held,* that a delivery at *Liverpool* was a condition precedent to a recovery. In *Burnett* v. *Kensington*, 7 *T. R.* 210, there was an insurance on fruit, warranted free from average, unless the ship was stranded. She was stranded, and though no damage was the consequence of the stranding, the insurers were held liable for an average loss arising from the perils of the seas; that being the grammatical construction of the instrument. The insurer on freight agrees to return part of the premium "if the ship sailed with convoy and *arrives.*" The ship having sailed with convoy and arrived, the insured recovered the return premium, though the ship, having been captured and re-captured, the insurer was obliged to pay for salvage. *Aguilar* v. *Rodgers*, 7 *T. R.* 421. So if the ship sail with convoy and arrive, this will entitle the insured to the stipulated return of premium, though the goods insured be afterwards lost, and the underwriters obliged to pay a total loss. *Horncastle* v. *Haworth*, 2 *Marsh. on Ins.* 674. The case of *Parker* v. *Towers*, 2 *Browne's Rep. Appx.* 80, is in principle the same as this case. It was an insurance on commissions valued at seven thousand dollars, " free of average and without benefit of salvage." The vessel was captured, and during the capture the insured abandoned and recovered for a total loss, although the vessel being afterwards released he earned his commissions, and thus had both his commissions and the amount insured. In the present case, the actual salvage of goods in their hands, is the defendants', by the fair and just reciprocity of the contract. If goods had been lost, when specie would have been safe, the loss would have been theirs, and the chances were much against them from the risks of sea damage, fire, &c. Having stood their own insurers for the risks peculiar to goods, they are entitled to the salvage of goods, when specie would have produced none.

2. But this contract is void, and neither party can have a remedy upon it. It is contrary to the nature of the *respondentia* contract, to leave the borrowers subject to the risks of the articles hypothecated. It is a loan " upon condition that if the thing upon which the loan has been made, should be lost by any peril of the sea, the lender shall not be repaid." *Emerigon,* 24. 33. To allow the risks to be modified by the lender, is opening the door to abuse, and

(Delaware Insurance Company *v.* Archer and others.)

the practice of usury.   " The insurer may restrict himself to particu-
lar sea-risks ; but against lenders, such a limitation would be void."
*Ibid.* 40.   " It would be intolerable, if the borrower, after having
lost his property by an accident within the time and place agreed
upon, should be obliged to pay the whole principal, with maritime
interest, under pretence of an agreement, which was radically void
and usurious." *Ibid.* 165. (*Hall*'s translation.)

The contract is void, because it is a wagering contract.   It is
wagering, because the indemnity from loss is not commensurate with
the risks incurred.   The risks assumed are those of specie.   The
articles at risk are goods, liable to very different perils from those
which specie encounters.   According to their diversity, one or the
other party would be the gainer or loser, contrary to the principle of
indemnity.   The claim of the plaintiffs, of more than four times the
actual salvage, and of the defendants, to keep the actual salvage,
shows this to be a wagering contract.   An insurance cannot be made
upon one thing, to depend upon the fate of another.   It is a wager.
Thus, money expended in reclaiming a *cargo*, cannot be insured upon
the event of the *ship*'s safe arrival, though in the ship, and its fate so
nearly connected with that of the ship. *Kulen Kemp* v. *Vigne*, 1 *T.
R.* 304. The cases of *Kent* v. *Bird*, *Cowp.* 583, and *Lowry* v. *Bour-
dieu*, 2 *Doug.* 468, are similar in principle.

The provisions of the *stat.* 19th *G.* 2, against wagering policies,
have been adopted in *Pennsylvania.* 3 *Yeates*, 461. 4 *Yeates*, 168.
1 *Rawle*, 106.  By the 5th section of that statute, *respondentia* loans
shall only be on the merchandize or effects on board.   Such a con-
tract being wagering and illegal, neither party can have any standing
in court, to enforce it. 4 *Yeates*, 24. 1 *Binn.* 119.   *Doug.* 451.   1
*East*, 96. 3 *Bos. & Pull.* 35. 3 *T. R.* 266.   *Cowp.* 790.   The illegal
ingredient, affects the whole contract. 11 *East*, 502.  8 *T. R.* 46. 562.
2 *Binn.* 324. *Pothier*, 39. 1 *T. R.* 225.

3. If the contract is to have any interpretation, different from
its strict and grammatical import, the only one that is equitable is
this ; that the borrowers were to be liable for damage peculiar to
goods, in the ordinary course of the voyage, but if any extraordinary
accident should occur, such as shipwreck, (as was the case here,) to
occasion a loss common both to goods and specie, the whole damage
should be referred to that cause, and the actual salvage, should be
the standard of adjustment.   Thus, in this case, the whole loss should
be referred to the shipwreck.   If goods are saved, and got on shore,
and are there plundered by the inhabitants, it is still a loss by the
perils of the sea. 3 *Eng. Com. Law Rep.* 57.   The whole is to be at-
tributed to the first cause, without which, none of the loss would have
happened. *Phill.* 286. 288. 11 *Johns. R.* 90.

*Reply.* It is argued on behalf of the defendants, that the language,
upon the construction of which this case turns, is the language of the
plaintiffs, and therefore to be taken most strongly against them.

(Delaware Insurance Company *v.* Archer and others.)

This admits that it was intended to benefit the company, by diminishing the risks they otherwise would have run, which is a material circumstance. But, in truth, it was the language of both parties, and is to be fairly construed. When the meaning of language is ascertained, it is to be applied, without regard to consequences; but it is an argument against a particular interpretation, that it leads to absurd consequences. The interpretation alleged by the defendants, does lead to absurd consequences, and, moreover, is a violation of what has been termed the grammatical construction of the memorandum. To say, as the defendants do, that the company are to have salvage, if specie would have produced it under the circumstances which happened, without regard to the actual fate of the goods, is absurd, and would operate in some cases to their own disadvantage. If the goods are all lost by fire, and specie could have been saved, they would have to pay salvage altogether, though a total loss happened. The terms of the contract are not " *if specie would have produced salvage under like circumstances.*" This is the language of the whole argument, but it is not to be found in the memorandum. The language of that instrument is, " to be liable to average, and entitled to salvage, as if it had been a specie shipment," which, if carried out into the terms used in the bond intended to have been executed, would read thus; " *liable to average, and entitled to the benefit of salvage, in the same manner, to all intents and purposes, as underwriters on a policy of insurance, on specie out and goods home, according to the usages and customs of the city of Philadelphia.*" There is nothing in the instrument referring to an uncertainty, as the rule of decision upon the rights of the parties. The whole argument, therefore, begs the question.

It is further argued, that the company is to have no salvage, if specie would not have produced it, as an equivalent advantage for agreeing not to claim for damage on goods. This admits the construction of the plaintiffs to the extent, that the meaning of the words *liable to average, as on a specie shipment,* is, being not liable to partial damage, because specie is not so liable.

How then can the correctness of the rest of the plaintiffs' construction be denied? It follows as a consequence, that the words, *entitled to salvage as on a specie shipment,* mean salvage, undiminished by damage; salvage in proportion to the original value saved; salvage, as it is in cases of specie, according to the quantity saved, without taking damage into consideration. The clause was not intended as a corresponding benefit to the borrowers, as is supposed, but to carry through the exoneration of the company from the risk of deterioration by damage, and the corresponding benefit to the defendants, was, in paying a premium only on a specie risk.

The defendants, it is said, are to keep the salvage, because if they had insured against partial damage, a risk which the company would not take, their underwriters would have been entitled to salvage.

This is an error.  No underwriter against damage, is entitled to salvage.  It belongs to him, who pays a total loss.

The argument of the defendants stands no better upon authority, than upon reason.  To the various authorities, which have been read to sustain a strict construction, it may be answered, that when the meaning is fixed, the contract may be applied to the facts with the utmost strictness, but authorities, which decide, that the true way to get at the real meaning of a contract, is to construe its language strictly, are entitled to little respect, nor do any of those cited for the defendants, proceed on this as a rule to construe commercial instruments.  (Mr. *Binney* here referred to, and commented on the cases cited by the defendants' counsel.)  These cases prove nothing to the purpose of the defendants, which is, that the contract should be so construed without regard to the consequences, as to produce absurdity.  No case can be found, which supports such a principle.

*Finally*, the contract is assailed as a wagering or gambling contract.  If it be so, it is certainly void, and no recovery can be had upon it.  But no contract was ever held to be a wager, where there was a real interest, and a reasonable meaning could be given to it, which would make the contract valid.  If the contract means what the plaintiffs say it does, it is a perfectly just, mutual and reasonable contract.

It is assailed also, because, as it is said, to settle losses on this principle would be contrary to the nature of *respondentia* loans.  The real contract is, that the lender shall assume all risks, except deterioration or damage of the goods, on the outward voyage, and surely this is lawful.  *Emerigon* means to say, that to prevent the loan from being usurious, the marine risk must be run, but this does not mean, that the lender is to take the risk of damage.  A *respondentia* loan, free from average, would not be bad.  This was formerly the universal contract.  It is true, the marine risk must be run, but the lender may reject the risk of damage to goods, and the borrower may agree, that he shall have his salvage, without regard to damage.  The premium, in this case, is not for all risks.  Indemnity is according to the contract, and a policy is an indemnity, though it reject all risks, but one.  All the views, that have been presented to destroy the plaintiffs' right to salvage as on a specie shipment, are fallacious, unjust and fanciful.

Then as to those objections, which confine the plaintiffs to the salvage of damaged goods.  To say, that if the damage arises from ordinary means, it is one thing, and if from extraordinary, it is another, is to make, and not to expound, the contract of the parties.  In every case, for none is excepted, average is to be settled as on a specie shipment, and salvage to be estimated, and paid in the same way; on specie, the partial loss is the specific part lost; the salvage is the specific part saved.

It is a mistake to suppose, that the defendants are merely to account for what is actually saved, without regard to its condition.  The salvage is the property of the borrower, which he agrees to

account for as sound, in like manner as if it were specie.   This is the agreement, and there is no conjecture about it, for the goods consider- ed as sound, constitute a salvage of six hundred and fifty-five seven hundredth parts of the shipment.

The opinion of the court was delivered by

GIBSON, C. J.—A considerable part of the argument on the part of the defendants, has been to prove that the perils to which specie is exposed, are as numerous and as imminent as those which are inci- dent to goods.   It is sufficient, that the parties themselves thought otherwise, and provided for the supposed difference accordingly.   That they intended to do so, can scarcely be doubted; else the clause by which, if goods were shipped instead of specie, the lender was " to be liable to average and entitled to salvage *as if it were a specie risk,*" would have been nugatory.   They undoubtedly meant something by it; and I am unable to see how the lender is to be precluded by any supposed principle of equitable compromise without regard to the terms of the contract, from recovering more than the value of the property saved; for that would be the legal effect of leaving the clause entirely out of the.contract.   It seems to be held both by the *English* and the *American* courts, that the lender takes the risk only of a total loss; but that any part of the property which arrives, goes to the lender, without regard to whether it be great or whether it be small, so that it does not exceed in value the amount of the loan, has never, I believe, been doubted anywhere.   Nor can I see, that if the parties had intended to provide specifically for cases like the pre- sent, the lender would have stipulated in terms, against liability for losses from what has, in the argument, been called sea damage. Every profession or business necessarily has its technical language, because having the signification of its terms fixed beforehand by usage and common consent, they not only express the meaning of those who use them with more precision, but are more comprehensive and less liable to misconstruction than popular terms, that have not the same advantage in respect of certainty.   It seems, as I have already said, that the lender is not liable to average by the principles of the *English* law; and it is therefore usual to dispose of the subject by a special clause in the contract.   But a stipulation that he should take on himself the ordinary risks in a policy of insurance, that of deterio- ration by the contact of sea-water excepted, would have been too narrow to answer the whole intent of the parties, which was evi- dently to make provision, not for a species, but a class.   There doubtless may be deterioration from other causes, though I am not familiar enough with the subject to point them out; at least the parties may have apprehended, that some such might exist, and it was probably for that reason, they thought proper to fix a particular standard, by which the nature and extent of the risk could, under any combination of circumstances, be certainly determined.   The terms employed.to exclude the excepted perils, are, in my appre-

hension, perfectly definite and perfectly intelligible, and show that the parties knew perfectly well what they were about. The words, ' *average*' and ' *salvage*,' of course relate to a partial loss; and the words, ' *specie risk*,' sufficiently indicate that only such was intended as is common to both specie and goods. The language of the clause is pointedly applicable to a loss from a peril common to both, and if the actual meaning of the parties were not conformable to it, it is impossible to conjecture what was meant. As respects the goods saved, then, we have the case of a partial loss, not by destruction of a part, but deterioration of the whole, occasioned by a peril, from which such an injury to specie could not have happened; and if the clause is not to operate in such a case, it is impossible to imagine one, in which it may; certainly none has been suggested. What remains then is to say, whether the question of total loss made by the defendants, is to be determined by the actual fate of the goods, produced as it was by a peril common to both, or by the conjectural fate of a shipment of specie in the same circumstances.

The object of the clause was to permit the borrowers to substitute goods for the money; and being for their convenience, it was of course not to produce an enhancement of the risk. The lender was paid for a specie risk, and consented to stand to no other; consequently the borrowers took on themselves all beyond what was necessarily incident to a specie shipment. But notwithstanding all but an inconsiderable number of the packages were saved, though in bad condition, the borrowers insist that, if specie had been in its place, the evidence would raise a violent presumption of its destruction, and hence they claim to charge the lender with a total loss, even without the benefit of salvage in proportion to the value of the goods saved. That is evidently an unsound construction of the contract, as it would put the lender in a worse state than if the privilege of shipping goods had been granted without any restriction of the risk whatever. If nothing more had been said, there would have been an indisputable right to salvage. But from the very nature of the agreement, the conjectural fate of the imaginary shipment of specie, was, as respects perils to which it would have been subject as such, to follow the actual fate of the merchandise shipped as its substitute and representative. And this was, in another aspect, extremely advantageous to the borrowers, who might have shipped even gunpowder, which, as regards a total loss from explosion by the accidental firing of the ship or a shot from an enemy, would have been at the risk of the lender. Yet it would be otherwise, if the rights and liabilities of the parties were determinable, not by the actual fate of the gunpowder, but the probable fate of specie in the same circumstances: and thus the effect of the clause would be to deprive the borrowers of indemnity for a total loss contrary to the legal effect of the contract, and manifest intent of the parties. The plain meaning of the agreement is, that goods shipped in place of the specie, should be specie for every purpose, but to increase the risk

(Delaware Insurance Company *v.* Archer and others.)

of partial loss. Is it difficult to believe, that the parties intended to commit the question of ultimate liability to the boundless ocean of surmise, when the fate of the actual shipment would furnish a certain criterion, and one equally fair as to both. The contract of insurance, or *respondentia*, is a contract of indemnity for real, not imginary, losses. In *Sage* v. *The Middletown Insurance Company*, 1 *Connect. Rep.* 243, Mr. Justice BALDWIN, in delivering the opinion of the court on a claim for straining while the ship was stranded, remarked, that "*invisible*, *uncertain* and *conjectural* damages are never the subject of remuneration;" and certainly the remark is applicable with at least equal force to a conjectural *loss.* It would evidently be unfair to conduct the adventure in the shape of goods with their peculiar properties, to the point of immediate danger, and there substitute imaginary casks of dollars to determine from the probable event, the question of total loss. If conjecture is to operate at all, it must begin its office at the point of embarcation; and it cannot be affirmed with certainty, though the custom of such voyages may render it probable, that specie would have been stowed in the run of the ship, or in any other part that would have exposed it to greater danger of total loss, than that to which the goods were exposed. But taking the fact to be otherwise, the most experienced navigator could not have predicted the event, had the ship sailed in ballast. Beginning the voyage at another period, with trim and sailing materially different, and with perhaps more favourable winds and weather, the chances are infinite, that she would not only have escaped the particular disaster, by which the loss was occasioned, but have weathered the coast altogether. It is not less reasonable to presume, that such would have been the event, than that casks of dollars would have been lost through a rift in her bottom. The presumption, on the contrary, is, that she would not have been driven to the place where the rift was made. The adventure is to be taken as goods or specie throughout; but certainly not as goods to bring it into jeopardy, and specie to increase the danger in order to fix the lender with a supposititious loss. Considering the goods then as representing the specie loaned, it is impossible to say, the lender had not an insurable interest. I am unprepared to say, what would have been the effect of the contract, had the goods been uncovered, or had the risk not attached. But taking for granted, that the want of an insurable interest would, in analogy to an illegal insurrance, the premium for which cannot be recovered back, have rendered the contract void, yet if an agreement to insure money, or goods the produce of it, at the option of the borrower, does not give an insurable interest in the thing selected and put on board, then parties are incompetent to contract for the insurance of a thing to be designated by the insured. I am apprised of no rule of law or policy which forbids it. The goods then being specie for the purpose of determining the average, are specie also for the purpose of determin-

ing the salvage. The packages saved are to be treated as casks of dollars, in regard to which there has been no loss whatever; and the plaintiff being entitled to recover in proportion to the number, is to have judgment for the largest sum found in the verdict.

Judgment accordingly.