# First National Bank of Bellefonte, Appellant, *v.* Rogers.

*Bills of exchange—Acceptance for special purpose—Notice.*

In an action by a bank against the acceptor of a bill of exchange, a verdict and judgment for the defendant will be sustained where there is evidence that the draft was accepted for the special purpose of enabling the drawer to pay certain freight charges, and the bank discounted it with knowledge of the special purpose for which it had been accepted, and applied the proceeds to the payment of an overdraft by the drawer upon the bank.

Argued Jan. 28, 1901. Appeal, No. 75, Oct. T., 1900, by plaintiff, from judgment of C. P. Jefferson Co., Feb. T., 1898, No. 51, on verdict for defendants in case of First National Bank of Bellefonte v. William A. Rogers, Arthur Brown, M. C. Armour, William C. Herron and D. B. Meacham, trading as Rogers, Brown & Company. Before McCOLLUM, C. J., FELL, BROWN, MESTREZAT and POTTER, JJ. Affirmed.

Assumpsit on the acceptance of a draft.

At the trial it appeared that on August 2, 1897, the defendants accepted a draft drawn upon them for $2,400, by the Valentine Iron Company. The bank discounted the draft and applied the proceeds to an overdraft by the Valentine Iron Company. The defendants offered evidence which tended to show that the draft had been accepted by them for the purpose of enabling the Valentine Iron Company to pay certain freight charges, and that the purpose for which the draft had been drawn was known to the bank at the time it discounted the draft. The court submitted the case to the jury. The jury returned a verdict for defendants. On a motion for a new trial REED, P. J., filed the following opinion:

The trial of this case was not very satisfactory. This is possibly the result of the contradictory character of the testimony and the feeling that the questions of fact involved and the law controlling them were not as fully understood and as clearly defined to the jury as we could wish. But on reflection, and in the light of the authorities cited on this motion, we are convinced that the case was for the jury and that the plaintiff has no ground to complain about the verdict.

The case was tried on the theory that if the plaintiff bank took the draft in suit in good faith, without notice of the circumstances under which and the purpose for which it was made, it was entitled to recover, otherwise not. Hence the contest centered on the question of notice. This draft falls within the designation of business or commercial paper. It was without present consideration, and was to be used for a special purpose. If the bank, with knowledge of these facts, joined with Robert Valentine in misapplying it and in appropriating the proceeds, not only to another use but to its own use, this verdict ought to stand. There were none of the bank books present at the trial, and we were denied the benefit of any light or certainty that they might have produced regarding the questions in dispute. The plaintiff contends that the draft and accompanying notes were discounted and the proceeds placed to the credit of the Valentine Iron Company, on the books of the bank on August 6, 1897, while the defendants allege that this was done at a later date. The plaintiff further contends that it was done before certain conversations which were had at the

house of Robert Valentine and at the office of John M. Dale relative to the use to be made of said paper, or what should be done with it; the defendants allege that it was done after these conversations. Moreover, the plaintiff's and defendants' witnesses differ very materially as to what occurred at these conversations. If the bank discounted this paper on the 6th, as testified by Col. Coburn and Mr. Harris, president and cashier, and the proceeds to the amount of the $2,400 draft were applied to wiping out the Valentine Iron Company's over draft of that amount in the bank, and this was done freely and willingly by Robert Valentine without disclosing to the bank how the paper had been obtained by him and for what purpose, it is difficult to understand why these matters should be the subject of subsequent conversations at Robert Valentine's house and at the office of John M. Dale.

Mr. Dale testifies that he was retained as counsel for Robert Valentine to look after his interests in connection with the Valentine Iron Company's affairs, that he went to Robert Valentine's residence, in company with Harry Valentine, and that the situation was there gone over, and among other things that were mentioned was this draft and certain notes. He states that the arrangement under which these notes and draft had been sent was stated to him and his advice asked as to how they should be used. Two or three days later, this witness testifies, there was a meeting at his office at which Robert Valentine, John P. Harris and, he thinks, but is not certain, Col. Coburn were present. This meeting was for the purpose of fixing the amount due by the Valentine Iron Company and by Robert Valentine to the plaintiff bank. He testifies that the "question of the use of this Rogers, Brown & Company paper was raised at that time. The notes and acceptance, or whatever the papers were, had not been indorsed and Mr. Harris, who was cashier of the First National Bank and also president of the Valentine Iron Company, insisted upon Robert Valentine indorsing them and placing them to the company's credit in the First National Bank. The matter was referred to me and the terms under which this paper was sent were discussed."

"Q. Now will you give us those terms, Mr. Dale, as nearly as you recollect? A. The terms that both parties seemed to agree upon at that time were that the Valentine Iron Company

was in very urgent need of money for the payment of freight or wages, I am not prepared to say which, and that Rogers, Brown & Company had agreed by telephone to furnish a certain amount of money, in order that either the wages or the freight could be paid, so that the works could continue, otherwise they would have been shut down, and the understanding upon which the money was sent was that it was to be applied to the payment of either the one or the other of these two items. Q. Freight or labor? A. Freight or labor, and was to be made good to Rogers, Brown & Company by shipments to them of iron from the furnace as fast as the same could be shipped. Q. Was that the way in which Rogers, Brown & Company were to be repaid for the remittance? A. That was the understanding, and there seemed to be no serious conflict between Mr. Harris and Mr. Valentine upon the terms. When the matter was referred to me, I said if the Valentine Iron Company could not carry out its contract with Rogers, Brown & Company, it would seem to me as though they had no right to use their money. At that time it was practically a certainty that the furnace was going to be closed down and that they would not be in a position to give Rogers, Brown & Company the iron which they sent the money for. . . . I further stated to Mr. Harris that to me it looked like a matter of honor to return those notes and acceptances, and he said that so far as a matter of honor was concerned, there was just as much in favor of the claim of the First National Bank as of Rogers, Brown & Company, because they also had advanced money to the Valentine Iron Company and there was an overdrawn bank account there, I believe, at the time. The result was that both Mr. Valentine and Mr. Harris left my office with the papers still unindorsed and in Mr. Valentine's possession, and that is all the connection I had with that branch of it."

This witness also states that the matter was spoken of at Mr. Valentine's house on that morning (referring to the first time when these notes and draft were mentioned in his presence), and "I have a dim recollection that Col. Coburn was there, but it is very faint, and I wouldn't like to testify to it. I think we sent over to his house for the Colonel." Harry Valentine testifies that he was present at a conversation had at Robert Valentine's house at which Mr. John P. Harris, Col.

Coburn and, he thinks, Mr. Dale were present. The terms and conditions on which these notes and draft had been sent by Rogers, Brown & Company, were stated at that time to Mr. Harris and Col. Coburn, and the witness says it was explained to them that this paper was sent for a special purpose. Mr. Harris stated that the overdraft in the bank "consisted of freight largely," and they wanted the paper placed to the general account of the Valentine Iron Company in the bank. Robert Valentine testifies that just before and at the time he indorsed this Rogers, Brown & Company paper and turned it over to the bank, he told Mr. Harris, the plaintiff's cashier, that it "had been sent to pay freight exclusively." Mr. Harris replied, "to the best of my recollection that we owed the bank for freight which they had advanced, and that virtually this money was for freight, and I must indorse it." Col. Coburn and Mr. Harris testify that they had no notice or knowledge whatever of the terms and conditions on which Rogers, Brown & Company sent this paper, or of the purpose for which it was to be used, before the same was discounted by the bank. Col. Coburn denies being present at any conversation concerning it had at Mr. Dale's office. He admits that he was sent for to go to Robert Valentine's house after the paper had been discounted, and states that Robert Valentine at that time wanted him to consent to let the overdraft of the Valentine Iron Company in the bank stand, and allow him to check out the proceeds of this draft, which he declined to do. He further states that there was some incidental remark made regarding freights just about the time he was leaving. Mr. Harris testifies that he was present at Mr. Dale's office, and thinks that Col. Coburn was there also. He has no recollection, however, of this Rogers, Brown & Company paper being under discussion. He also states that he was present at Robert Valentine's house, but did not hear the conversation regarding this paper testified to by Harry Valentine.

From the foregoing recital of the testimony we think it is clear that the case was for the jury on the question of whether or not the plaintiff took this draft with notice of the terms and conditions upon which it was made and the purpose for which it was to be used, and that it is anything but clear that the jury erred in finding that it did. If this action had been brought

by the Valentine Iron Company on the defendants' acceptance of this draft, as a matter of course, there could be no recovery, . and if the bank was made acquainted, in the course of its transmission and indorsement to it, with the terms and conditions attached to the same, it stands on no higher ground than the Valentine Iron Company : Nat. Bank of Bedford v. Stever, 169 Pa. 574.

We have grave doubts whether a verdict should not have been directed for the defendants on the ground that the draft in suit was without consideration, and that the plaintiff was not a bona fide holder of the same for value. It was not accepted as an absolute payment of the Valentine Iron Company's overdraft in the bank. The amount of the draft, less the discount, was placed to the credit of the Valentine Iron Company on the books of the bank, but the company remained liable on its indorsement, which Col. Coburn says was not without recourse, and there is nothing in the transaction that would prevent the bank from charging up the draft to the Valentine Iron Company's account at maturity, or subsequently, if not paid. In other words, the bank parted with nothing of value, and at most only accepted the draft as a conditional payment or as collateral security for a pre-existing debt, and if the draft was without consideration, which is not disputed, there could be no recovery by the plaintiff : Carpenter v. National Bank of the Republic, 106 Pa. 170 ; McCartney v. Kipp, McLain's Appeal, 171 Pa. 644.

We denied the plaintiff's first, third and fourth points because we failed to see their application to the case, or any testimony that would warrant the submission to the jury of the questions therein suggested. The fifth point was refused because we thought it was a question for the jury, on the evidence, whether the plaintiff was a purchaser for value or not. We now think that the bank was not a purchaser for value, and that the court should have so declared. The tenth point was refused for reasons already stated.

Upon due consideration of the motion for a new trial, and of the reasons therein assigned, we are satisfied that no error was committed in the trial of the cause of which the plaintiff has any ground to complain, and also that the verdict should not be disturbed. The motion is therefore denied, and new trial refused.

*Error assigned* among others was in not giving binding instructions to the jury to find for the plaintiff.

*Ellis L. Orvis*, with him *W. W. Winslow* and *Calvin M. Bower*, for appellant.—Where an acceptance is for a valuable consideration, it is immaterial whether or not the proceeds are applied according to the original agreement: Townsley v. Sumrall, 2 Peters, 170.

Mere knowledge of the terms of the arrangement between drawer and acceptor in the holder is not sufficient to prevent the recovery: Craig v. Sibbett, 15 Pa. 238; Gray v. Bank of Kentucky, 29 Pa. 365.

*A. J. Truitt*, with him *Walter L. Granger*, for appellees.—No person will be regarded as a bona fide holder for value who receives the paper as a conditional payment to, or as collateral security for, an antecedent debt: Smith v. Popular Loan & Bldg. Association, 93 Pa. 19; Dingman v. Amsink, 77 Pa. 114; Lerch Hardware Co. v. First Nat. Bank of Columbia, 109 Pa. 240; Altoona Second Nat. Bank v. Dunn, 151 Pa. 228; Maynard v. Sixth Nat. Bank, 98 Pa. 250; Carpenter v. Nat. Bank of the Republic, 106 Pa. 170; Royer v. Keystone Nat. Bank, 83 Pa. 248; Cummings v. Boyd, 83 Pa. 272; Smith v. Hogeland, 78 Pa. 352.

The presumption of law is that the paper was taken conditionally and as collateral security, as to a past existing debt, and not in extinguishment of that debt: Hunter v. Moul, 98 Pa. 13; McCartney v. Kipp, 171 Pa. 644; Maynard v. Sixth Nat. Bank, 98 Pa. 250; Lenheim v. Wilmarding, 55 Pa. 73; Cozens v. Middleton, 118 Pa. 622; Central Nat. Bank of New York v. Valentine, 18 Hun, 417; Mfg. Nat. Bank v. Newell, 71 Wis. 309; Lancaster County Nat. Bank v. Huver, 114 Pa. 216; Sixth Nat. Bank v. Lorillard Brick Co., 18 N. Y. Supp. 861; Platt v. Chapin, 49 How. Prac. Rep. 318.

Not only must the holder of negotiable paper, in order to be exempt from the defense existing against it, receive the same in due course of trade without notice, but also for value: Watson v. Cabot Bank of Cabotsville, 5 Sandf. 423; 1 Daniel on Negotiable Instruments, sec. 789*a*; Crandall v. Vickery, 45 Barb. 156; Davis v. Wait, 12 Ore. 425; Dresser v. Missouri, etc.,

Ry. Construction Co., 93 U. S. 92; Weaver v. Barden, 49 N. Y. 286.

PER CURIAM, April 1, 1901:

A careful perusal of all the testimony in the case shows that the question of fact involved was for the determination of the jury.   No error appears in the charge of the court, and the opinion refusing the motion for a new trial furnishes a complete and satisfactory answer to the appellant's contention.   As none of the numerous assignments of error would warrant a reversal of the judgment, they are all dismissed.

Judgment affirmed.