Mederic E. Roger

    vs                              No. 7967

Milliken and Farwell

March 6th, 1921 .

Mederic E. Roger

vs                                     No.7967

Milliken and Farwell

> Appeal from Civil District Court, Hon. Hugh C. Cage, Judge.
>
> CHARLES F. CLAIBORNE, JUDGE.

This case was before us heretofore and is reported in 14 Ct. App. 92. The plaintiff seeks to subject the proceeds of sale of a crop of sugar in the hands of the defendant to his privileged claim of overseer. He alleged that he had been employed by his father S. E. Roger as overseer to manage his Bellewood Plantation in Assumption Parish for the year 1914; that

> "the said S. E. Roger agreed to pay him for his services the sum of One Hundred and twenty-five Dollars per month or the sum of Fifteen Hundred Dollars for the entire year 1914";

that he performed his duties as such during the whole of the year 1914, and that there is due him said sum of $1500

> "less the sum of $327.16 received by him from S. E. Roger on account";

that said Bellewood Plantation was cultivated during the year 1914 in sugar cane, corn and other crops upon which he had a privilege superior in rank to that of any other person except the laborers; that said crop was shipped by said S. E. Roger to Milliken and Farwell, and was sold by them and that

> "the proceeds of the sale of same, which were more than sufficient to pay him the amount due him in full were by said Milliken & Farwell retained and appropriated by them",

and that they have refused to pay him the amount due to him; that said crop so shipped to Milliken and Farwell went into their hands affected by the superior privilege in favor of petitioner which followed the proceeds of sale in their hands, and which entitles petitioner to be paid therefrom and to recover judgment against the said Milliken & Farwell.

By a supplemental petition the plaintiff alleged that

he had already attained a judgment against S. E. Roger for
$1278.84 representing the balance due him for his services as
overseer as set forth in the original petition herein, but that
he had not been able to collect said judgment for the reason that
S. E. Roger had no property out of which said judgment could be
paid.

By a second supplemental petition S. E. Roger was made
a party defendant.

S. E. Roger answered, neither admitting nor denying the
allegations of the petition and submitted the matter.

Milliken and Farwell filed a general denial and specially
denied that the plaintiff was employed by S. E. Roger as an over-
seer, but alleged that he was a son of S. E. Roger and

"as such lived with him and subsisted off the proceeds
of the plantation; that Bellewood Plantation was a small
place and did not need an overseer, that another son of
S. E. Roger, one Clay A. Roger, was also claiming a com-
pensation of nine hundred dollars as assistant overseer
of the same plantation; and they believe the whole trans-
action is collusive";

that S. E. Roger has received $2000 homestead, and that the pre-
sent demands are extortionate, and they deny that plaintiff is
entitled to a privilege; they admit that a certain proportion of
the crop of sugar and molasses was shipped to them, but they deny
that any part of the proceeds of sale of the same was at any time
retained or appropriated by them, or that at any time did they
have on hand an amount sufficient to pay plaintiff's claim; that
by virtue of a duly recorded act of pledge and privilege on the
crop, they agreed to make advances to S. E. Roger for the purpose
of cultivating a crop of sugar and molasses; that all S. E. Roger
had was a credit with them which vanished when they applied it to
the payment of S. E. Roger's debt; that plaintiff was aware of
this contract and by his acquiescence in it is estopped from as-
serting his present claim.

The judge of the District Court found that S. E. Roger
had

"employed the plaintiff as overseer on the plantation

during the year 1914 at a salary of $1500";

that the defendants had the usual contract with S. E. Roger to advance to him money and supplies to cultivate the Bellewood Plantation and make a crop during the year 1914, according to which they had a privilege upon the crop and Roger bound himself to ship the same to the defendants who were authorized to sell the same and apply the proceeds of sale to the reimbursement of the advances of money and supplies made by them; that the crop was made, by Roger, shipped by him to the defendants, who sold it and immediately applied the proceeds to the payment of their advances; that their account was closed on May 31st, 1915 leaving a balance due to them by Roger of $9316.81; that the suit of plaintiff herein was filed only on December 30th, 1915 ;after the imputation of payments had been made and the accounts closed;that at the time this suit was filed, the defendants had no money in their hands belonging to S. E. Roger, because as soon as the defendants sold his sugar and molasses and placed the proceeds of sale to his credit, his indebtedness to them, and their indebtedness to him, became instantly reciprocally extinguished by compensation, by operation of law, even unknown to them; C. C. 2207, 2208; that Roger owed defendants many thousand dollars before he shipped a pound of sugar, and that his debits were always many dollars in excess of his credits, ending with a final debit of many thousands of dollars. The learned Judge concludes his opinion by saying:

>"I am of opinion that as soon as the proceeds of a crop subject to the agricultural liens established thereon by the laws of Louisiana come - lawfully come - into the hands of a bona fide creditor of a planter, and are struck by the law of compensation, they cease to exist as proceeds of sale, and unsatisfied liens are lost".

The judge quotes no authority for his conclusion except the case of Union Seed and Fertilizer Company vs J. Supplesons Planting Co. 138 La. 692. In our previous opinion we stated that the facts in the two cases were not the same; a reexamination of the case satisfies us that we were correct.

There was judgment for the defendants and the plaintiff has appealed.

I. The first question to be examined is whether the plaintiff was ever employed by his father S. E. Roger as an overseer during the year 1914?

We agree with the District Judge that the plaintiff has established this branch of his case. He swears that he was employed by his father as overseer and book-keeper at a salary of $125 per month for both; that $75 was the proportion to which he was entitled for salary as overseer, and $50 for keeping the books and doing clerical work in the office, making out and paying the pay rools; that he received on account from his father $327.16; that the Plantation covered 1375 acres;

S. E. Roger testifies that he employed his son, the plaintiff, as overseer for the year 1914 at a salary of $125 a month.

Leo Guillot, cashier of the Bank at Assumption, testifies that M. E. Roger, acted for his father in his transactions with the Bank.

This testimony establishes the employment and the salary. 125 La. 15; 24 A. 76. But according to plaintiff's own testimony it is only his salary as overseer or $75 a month or $900 a year which is entitled to a privilege. That must be credited with $327.16 as one of the two items which the debtor had the most interest in discharging as a privileged debt. C. C. 2166 (2162); 32 A. 145. The salary of book-keeper or $50 a month has no privilege on the crop superior to that of the defendants. 125 La. 15. Plaintiff is therefore entitled to a privilege superior to the defendants only for $572.84.

II. But we cannot agree with the learned District Judge in his theory of compensation, and that as soon as a planter ships his crop to a factor in New Orleans, and the factor sells the crop and passes the proceeds upon his books to the credit of the planter, all privileges cease to exist upon the proceeds up to the amount due the factor. If this were the law, the planter could easily defeat the claims of his employees. But the law has

protected them better against the combined action of the planter and of the factor. The judge might have been right if the proceeds of sale of the crop had been the absolute property of S.E. Roger. But they were not. They came into the hands of the defendants impressed by the law with the privilege in favor of the overseer superior to the claims of defendants. Article 2215 (2212) C. C. provides that:

"Compensation cannot take place to the prejudice of the rights acquired by a third person".

S. E. Roger could not have released his crop or its proceeds of the privilege by simply turning them over to the defendants; nor could the defendants have released the proceeds of the privilege affecting them by merely placing them upon their books to the credit of S. E. Roger.

But we understand the jurisprudence to be against the opinion announced by the District Judge.

The law is as follows:

C. C. 3217 (3184) "The debts which are privileged on certain movables are the following: 1o The appointment or salaries of the overseer for the current year, on the crops of the year and the proceeds thereof, debts due for necessary supplies furnished to any farm or plantation, and debts due for money actually advanced and used for the purchase of necessary supplies and the payment of necessary expenses for any farm or plantation, on the crops of the year and the proceeds thereof".

It must be noticed that the overseer's privilege is not only on the "crops", but upon "the proceeds thereof". 52 A. 2148.

By Act 80 of 1886 p 127 the legislature provided "that all privileges and pledges on crops, granted by existing laws of this State, shall be ranked in the following order of preference, viz:

First. Privilege of the laborer.

Second. Privilege of the lessor.

Third. Privilege of the overseer.

Fourth. Pledges, under Section 1 of Act No. 66 of 1874, order of recordation.

Fifth.  Privilege of furnishers of supplies and of money, and of the physician".

It follows, therefore, that the plaintiff, overseer, had a privilege upon the crop of 1914 and upon the proceeds thereof superior to the pledgee under the act of 1874 or the furnisher of supplies under C. C. 3217, and in this case superior to the defendants.

The evidence in this case shows that S. E. Roger shipped to the defendants sugar and molasses, and that the defendants sold the same and received the proceeds, amounting to several thousands of dollars, more than sufficient to pay plaintiff, and that they have made their own the whole of those proceeds by crediting them to the debt due to them by S. E. Roger.  They had no right to do so to the prejudice of the plaintiff in this case.  The crop and its proceeds were dedicated by law to the payment of a certain class of creditors, and no action of the planter of of the factor, and no agreement between them could defeat the law as long as the crop or its proceeds remained in the hands of the planter or of the factor. 139 La. 558 (576).

In 48 A. 686 the Court said:

"The personal liability arising out of the act of converting another's property, or property on which he has a lien, cannot be avoided and frustrated by the fact itself of the conversion".

Quoting from the 86 U. S. 544 the Court said:

"The factor had, in payment of his debt, received and applied the crop he knew to be pledged for the rent of the plantation and on the suit of the lessor.  It was held that the factor was liable to the lessor for the proceeds of the crop".

The leading case upon the subject is Welsh vs Barrow 3 A. 133.  The facts were as follows: Shields owned a plantation; Welsh was overseer upon it during 1842; in November 1842 Shields sold it to Barrow; the crop of 1842 was sold and the proceeds were received by Barrow; Welsh sued Barrow for his salary for 1842; the defense was that the sale of the crop by Shields to Barrow extinguished the overseers privilege.  Held:

374

\* "By Article 3184 the salary of the overseer for the year last past is privileged on the product of the last crop - thus presupposing that the planter would not keep his crop, but sell it; and thé privilege is affixed specifically on the proceeds. Such is the construction given to this article by the Supreme Court in the cases cited; and in the Succession of Johnson, Kennedy, Appellant, 3 Robinson 216, the Court held that this privilege on the last year's crop may be exercised upon the proceeds after the crop has been sent to market and sold. If the proceeds were in a court of justice, or in the hands of the defendant's factor, the plaintiff would have his privilege over other creditors; and we do not understand on what principle he can be deprived of it when the proceeds are in the defendant's pocket".

In 7 A. 526 it was said that the privilege of the overseer followed the crop in the hands of third persons.

In 52 A. 2139 it was held that the purchaser of a plantation with the crop upon it takes the crop subject to the privilege of the furnisher of supplies thereon. Affirming 3 R. 216; 3 A.276, 133; 7 A. 526; 22 A. 438; 6 R. 484.

In the 52 A. on page 2148 the Court said that the litigation in that case was not between contesting adverse creditors or owners ,, but between the party entitled to a privilege against the person having still possession of the property who under the law stood quoad the privileged creditor in the shoes of the owner of the crop.

In 107 La., 322 the ruling was that the purchaser of a growing crop was charged with presumptive knowledge of the existence of the privilege of the furnisher of supplies resting upon it; an allegation that he had such knowledge was not necessary; this privilege could be enforced in a personal action against the purchaser of the plantation and detainer of the crop or its products. Affirming 52 A. 2139; 3 A. 133 and 7 A. 526.

In 117 La., 163 (177) it was said:

"The privilege for advances conferred by C. C. 3217 is not confined to the growing crop, but bears upon the

products after they are severed from the soil, and follows then into the hands of a purchaser who buying directly from the planter, is presumed to know that such privilege may or actually does exist".

In that case the Court said on p 180:

"The intervenor must be held to have taken the seed subject to the obligation with which it was burdened, and must either return it or discharge that obligation".

The Court held in 131 La. 379:

"It has been uniformly held that the purchaser of a growing crop is charged with presumptive knowledge of the privilege of the furnisher of supplies and buys subject to such privilege".Quoting all the authorities cited above. In that case the Court said on page 379:

"Louisiana is an agricultural state, and its prosperity largely depends upon agriculture. To enable the farmer to make his crop, the privilege of the furnisher of supplies must be recognized and must be adequately protected. This protection is assured by the enforcement of the privilege upon the crop, or, if sold, upon the proceeds thereof, and by charging the purchaser from the planter with knowledge that that crop is bought subject to any liens that may be upon it at the time of the purchase. As long as the agricultural product remains in the hand of the farmer or planter, it is a crop and nothing else; but when his vendee parts with ownership the agricultural product can no longer be considered a crop, it has become merchandise; hence it necessarily follows that the lien is gone".

The same principal must apply to the laborer; the overseer, and all who have raised the crop, and to factors who receive the crop, sell it, and collect the price.

"Equity uncontrolled by positive law does not allow them to x x propper by the labor and expense of others". 13 A. 55; C. C. 1965.

The privilege of the overseer for his salary primes the pledge or privilege of the furnisher of money and supplies. 7 A.

668; 13 A. 443; 24 A. 76; 125 La. 3, 14, 15.

We conclude therefore that the furnisher of supplies
to raise a crop, with a pledge under Act 66 of 1874 p 114 or
with a privilege under C. C. 3217 (3184), cannot apply the pro-
ceeds of sale of the crop received by him to the payment of his
advances until the privileges upon the crop superior to his own
have been paid; and that when he has received those proceeds, he
becomes personally liable for the payment of those superior pri-
vileges to the extent of the proceeds of sale in his hands at
the time the claim is made by the superior privileged creditor.

It is therefore ordered that the judgment herein be re-
versed and avoided, and that there now be judgment in favor of
the plaintiff herein Mederic E. Roger and against the defendants
Ellen R. Farwell and the Succession of Charles A. Farwell, in
solido, for Five Hundred and seventy-two 84/100 Dollars with
five per cent per annum interest from December 30th, 1915 until
paid and all costs of suit with privilege upon the proceeds of
sale of the crop of 1914 in defendant's hands.

> Judgment reversed.
> March 6th, 1921 .