SUCCESSION OF HUGH B. JOHNSON—WILLIAM KENNEDY and another, Appellants.

One who has ceased to act as overseer, but continues his services as an agent for the owners of a plantation, has no privilege on the crop for his services in the latter capacity.

An overseer whose services have continued for one year and for a part of a second, has, under art. 3184 of the Civil Code, § 1, a privilege on the crops of both years, or on either, for the whole amount due him. His privilege on the crop of the past year, may be exercised upon its proceeds, even after it has been sold ; but as to the growing crop, his privilege is confined to the crop itself.

The holders of notes given for the price of a tract of land, though not identified with the sale by the *paraph* of a notary, will be entitled to a privilege on the thing sold. The *paraph* of the notary is not the only means by which the notes may be identified. Their identity may be proved by his oath.

APPEAL from the Court of Probates of Catahoula, *Taliaferro*, J.

BULLARD, J. The curator of the vacant estate of Hugh B. Johnson having presented his tableau, or statement of the debts due by the estate, showing the order in which he proposed to classify them, sundry oppositions were filed, two of which only need now be noticed, to wit, those which relate to W. Kennedy and Louisa Harper, they alone having appealed from the judgment of the Court of Probates amending the tableau.

I. William Kennedy was the overseer on the plantation of the deceased for the year 1839, and for a part of 1840, and his claim as such, and as agent subsequently, was put down on the statement or tableau as privileged upon the crop of 1840. The Judge of the Court of Probates was of opinion that he was entitled to a privilege on the crop of 1840, only for his wages as overseer for a part of that year, amounting to $219 ; that for his services as agent a few months longer, during the same year, amounting to $306, and for his wages for the year 1839, amounting to $700, he was to be classed as an ordinary creditor.

We concur with the Probate Judge in the opinion that the salary of Kennedy as agent, after he ceased to be overseer, is not priviledged upon the crop. But we think that for his wages in that capacity for 1839, and a part of 1840, he has a privilege on the crops of both years for the whole amount. Art. 3184 of the Civil Code, is in the following words : " The debts which are pri-

vileged on certain moveables are the following : I. The appointments or salaries of the overseer for the year last past, and so much as is due for the current year, on the product of the last crop, and the crop at present in the ground." &c. This article supposes a continuity of service, and the privilege is not confined to the crop itself of the past year, but extends to the product of it. In relation to the growing crop, the expression is different. The privilege as to the last year's crop may be exercised, it would seem, upon the proceeds, after the crop has been sent to market and sold. The two clauses of the sentence are connected by a copulative conjunction, and give, we think, a privilege to the overseer upon both crops, or either, for the whole of his wages for the past and current year.

II. The other appellant, Louisa Harper, complains that Painter and Williams were set down on the tableau as entitled to the vendor's privilege, for two claims, the one for $6034, and another for $4034, evidenced by two notes given by the deceased ; and that Tew and Dosson are allowed to stand as privileged creditors, although they are not so. She represents that she is herself the holder of a note of Johnson's, and is classed as having the vendor's privilege and a mortgage for $9034.

The two notes held by Painter and Williams are produced and identified with the sale of the plantation and slaves from Lope to Johnson ; not by the *paraph* of the notary, it is true, but by his oath. They are for the same amounts, of the same date, and payable at the same periods, to the order of the vendor. The act of sale recites that, "the said Johnson has executed two promissory notes, dated 4th March, 1839, and payable, one on the 4th March, 1840, for $4034, the other payable on the 4th March, 1841, for the sum of $6034, which *said notes are secured by personal security."*

It is argued that these expressions in the deed, coupled with the fact that personal security was given, and that, with respect to the other notes given for the price, payable afterwards, a mortgage was expressly reserved, show that the parties did not intend that the notes in question should be secured also by the vendor's privilege ; that they do not bear the *ne varietur* of the notary as the others given for the rest of the price do ; that the names even

of the sureties are not given ; and that there is strong reason to believe that the vendor credited the sureties and waived his privilege as vendor.

To this it may be said, that the *paraph* of the notary on notes is not exclusive evidence of their identity, and that the vendor has a privilege on the thing sold, when it appears by the deed that the sale was on credit. The case of *Howard* v. *Thomas* was a stronger one than the present. In that case the court held that, although it was *agreed* that the act of sale should contain no special mortgage, and that the price should be given in drafts, " which when paid shall be in full," &c., the vendor had a right, upon non-payment of the drafts, to revert to his original contract, and seize the property upon his privilege of vendor. 3 La. 112.

We freely admit that such a practice is calculated to mislead, and may be productive of frauds ; and that persons taking notes, regularly identified by a notary, and seeing, on recurring to the act, that they were given for the price of an *immoveable* and secured by special mortgage, while other notes given for the same purpose are expressly declared to be secured by personal security, and no mortgage reserved, might fairly conclude that their own notes alone were secured either by a mortgage or privilege on the immoveables. If it were *res nova* we should hesitate to pronounce that, as to *third persons*, the vendor, under such circumstances, still retains his privilege. But the vendor's privilege is of a character so sacred, that in cases of doubt it ought, perhaps, to be maintained ; and the court has already settled the question arising in this case in several previous ones, particularly in that above referred to, and in that of *Moore, Adm'r*, v. *Louaillier et al.* 2 La. 575.

It is, therefore ordered and decreed, that the judgment of the Court of Probates be affirmed, as to all matters except the privilege of W. Kennedy ; that in relation to his claim it be reversed ; and that the statement of debts be so amended, as to place the said Kennedy as a privileged creditor on the crop of 1840 for his wages as overseer for the years 1839 and 1840, to wit, the sum of nine hundred and nineteen dollars, and as a simple creditor for the balance of his demand ; that the statement of the debts as thus

amended, be homologated ; and that the costs of the appeal be paid out of the estate.

*Purvis*, for the appellants.

*Garrett*, contra.