■ Simon, J.
This case, is in some respect the sequel of that of Welsh v. Shields et al., 6 Rob. 484, in which the plaintiff, having sued for the recovery of his wages as overseer on Shields’ plantation, in the year 1841, was allowed, under the article 3184, § 1, of the Civil Code, to exercise and enforce his lien or privilege on his employer’s crop of 1842, then in the possession of his co- *528 defendant Barrow, by whom the plantation had been purchased. The plaintiff’s claim, was then limited to the amount due him for 1841, although, in consequence of the sale of the place by Shields to Barrow, he had ceased to act as Shields’ overseer, and had acted as such for the latter for a part of 1842. He had finished the crop of 1842 for Barrow’s account after the sale, continued to act for the latter as his overseer for the year 1843, but had set up no claim by privilege on the crop of 1842, then sequestered, for the proportion of his wages for the last year, due him by Shields before his sale of the place to Barrow. We then said ; “ The article, (above quoted,) supposes that there may be cases in which an overseer, who has made a crop on a plantation, may continue to be employed on the same plantation for a part of the following year. In such cases, where his salary has not been paid for the preceding year, and any part of his wages for the current year be due, the law allows him a privilege on the proceeds of the last crop, and on the crop which is in the ground at the time that his services are interrupted or ended and we came to the conclusion, that the plaintiff had not lost his privilege by the transfer of the place to another person ; and that Barrow had purchased the crop, subject to the right previously acquired by the plaintiff. Thus, we recognized that the crop of 1842, then sequestered in Barrow’s hands, was affected to the payment, by privilege, of the amount due to the plaintiff’ for his wages for the year 1841, which he claimed, and also for so much as was due him for the year 1842, which he did not then claim, and ordered that his demand should be satisfied out of the proceeds of said crop accordingly. Our judgment was based upon the article above quoted, which provides, that “ the debts which are privileged on certain moveables are: First, the appointments or salaries of the overseer for the year last past, (1841,) and so much as is due of the current year,{1842,) on the proceeds of the last crop, (that of 1841,) and the crop at present in the ground,” (that of 1842 sold to Barrow in the fall of that year.) The writ of sequestration issued to enforce the plaintiff’s privilege, had been executed during the rolling season of 1842, and we thought that the law relied on was then clearly applicable.
But the plaintiff now seeks to recover of Shields the amount *529 due to him, for his services as overseer on the plantation, from the 1st of January, 1842, to the 9th of November following, to wit, $771 70, at the rate of $900 a year, the difference for the balance of the year, to wit, $128 30, having been paid to him by Barrow ; and he has made the latter a party to the suit, in order that a privilege might be decreed to him, the plaintiff, on the crop of 1843, made since Barrow became the owner of the plantation, he, being in the employ of Barrow when said crop was made, but being in the employ of Shields when the amount claimed accrued.
In order to secure the exercise of the privilege claimed by the plaintiff on Barrow’s crop raised in 1843, the plaintiff obtained a writ of sequestration, for such part of said crop as might be sufficient to satisfy his claim ; and, accordingly, seventeen hogsheads of sugar were seized and sequestered by the Sheriff.
Judgment was rendered below, against Shields, for the amount sued for; but the Judge, a quo, having refused to allow the plaintiff the privilege by him claimed on Barrow’s crop of 1843, rejected his demand as against Barrow; and from this last judgment the plaintiff has appealed.
It is first to be noticed, that the petition in this suit contains no allegation, that Barrow is personally bound for the debt sued for ; and it alleges, that the plaintiff’s object, in calling Barrow as a party defendant in this suit, is only to exercise his alleged privilege on the crop of 1843, contradictorily with the owner thereof.
The o.nly evidence upon which the question of privilege was tried below, results from certain admissions of the parties found in the record, in the following words : “It is admitted, that the plaintiff acted as overseer of the Myrtle Grove plantation, in the employ of T. R, Shields, as alleged in the petition, in 1842 j that his compensation for the same is correctly stated therein ; that said plantation was sold, and the slaves thereon to R. R. Barrow, on the 9th of November, 1842, and possession thereof taken by said Barrow, and ever since continued. That, during the year 1843, Welsh acted as the overseer on said plantation by contract with Barrow, and that the value of the crop made thereon in 1843, was more than one thousand dollars, besides expenses.”
We think the Judge, a quo, did not err. From our decision in *530 the first case, it is clear that the plaintiff was entitled to his privilege on the crop of 1842, raised by him for the benefit of Shields, and sold by the latter to Barrow before said crop was finished \ his right was acquired at the time of the sale, and the subsequent act of his employer could in no manner infringe or defeat it ■ but this is no reason why he should pretend to enforce his said privilege upon the proceeds of the crop of the ensuing year made entirely after the sale to, and possession of, Barrow, and why the latter should be made responsible to pay Shields’ debt, and be obliged to suffer a privilege to be exercised on his own crop for services rendered to Shields for a part of the previous year. In the case of Johnson v. Kennedy et al., 3 Rob. 216, we held that art. 3148, supposes a continuity of services. Here, the plaintiff’s services for Shields had ceased; and although he continued to act as overseer on the same place for Barrow, the continuity of services was not for the same person; and, in such case, we are not ready to say that the overseer’s privilege should extend, with regard to the salary due him by the former proprietor for the services of the previous year, to the crop made in the subsequent year by another person. The right, according to the article of the Code, appears to be allowed in relation to the same employer, who has .not paid his overseer’s wages for the year last past, and who continues to keep him in his employ for the whole or part of the following year; but we cannot admit the proposition, that such overseer has a right to exercise his privilege upon the third crop made on the same plantation by a third person, and that such third person should be made thereby indirectly liable to pay the debts of the former owner. In the first case, the plaintiff’s right on the crop of 1842, had been acquired previously to the sale ; but in this instance, it is clear, that having never acquired any right on the crop of 1843, as resulting from the services by him rendered to Shields, he has none to exercise.
With regard to the right which the plaintiff may have to claim the amount due to him out of the proceeds of the crop of 1842, which was disposed of by Barrow after his purchase, and which the latter may have kept in his hands, this is a question which is not presented by the pleadings; and if any such right exist, so as to make Barrow personally bound to pay said amount, it has been *531 properly reserved by the Judge, a quo, in the judgment appealed from.

Judgment affirmed.