## Farrar *v.* Rowley et al.

Where the factors of a planter keep two separate accounts, one in the name of a particular plantation, and the other in that of R. its ostensible owner, and the balance on the latter is in favor of R., but the factors are creditors on the plantation account, the balance due on the latter, with the privilege attached to it, will not be extinguished by that due to R. on his private account, where there is no allegation or proof of fraud, nor any violation of the rights of mortgage creditors upon the crop on which the balance against the plantation is privileged.

Where the price of mules, purchased for the use of a plantation and paid for by a third person, is reimbursed by a draft on the factors of the planter, the advance will be a privileged claim under art. 3184 of the Civil Code. The mules were *"necessary supplies"* within the meaning of the statute, and the extinguishment of the vendor's privilege, brings the advance within the fair intendment of the statute.

An overseer whose services have continued during one year and a part of a second, has, under art. 3184, §1, of the Civil Code, a privilege on the crop of the second year, valid against a third person, who purchases during the second year, the plantation and crop then in the ground.

A sheriff, by whom a plantation and slaves had been seized and taken possession of, who has paid himself out of the funds in his hands for all disbursements made by him for the safe keeping and preservation of the property, can make no additional charge for his responsibility and general care; for this he is remunerated by the emoluments of his office. *Per Curiam*: Sheriffs are bound to take care of property taken possession of by them, and are authorized to lay out money for its preservation. They may appoint guardians for its safe

custody, and the law gives them ample authority for all proper expenditures, and the constitution imposes no obstacle to their reimbursement; but art. 71 prohibits such allowances as that claimed in this case.

APPEAL from the District Court of Concordia, *Barry*, J.   *Thomas, Snyder* and *Farrar*, for the appellants.   *Frost, Shaw* and *Sparrow*, for different appellees.   The judgment of the court was pronounced by

EUSTIS, C. J.   This appeal is taken from several decrees of the court of the ninth district, according privileges on the price of two plantations.

The first we shall notice is that in favor of *Wright, Williams & Co.*, merchants of New Orleans.   The judge allowed them a privilege on the crop of 1847, for the sum of $2242 77, and directed them to be paid out of its proceeds. They were the factors of the plantation.   It appears that they kept two accounts, one in the name of the Marengo plantation, and the other in the name of *Samuel Rowley*, the ostensible owner.   In the latter the balance was in favor of *Rowley*, but in the plantation account the factors were creditors.   The privilege was allowed on the ground that the amount was for provisions, and other supplies necessary for the cultivation of the plantation.   It is contended by the mortgage creditors, who are the appellants, that the plantation account was extinguished in fact, by the balance of the private account of *Rowley*, which was largely in his favor.   If the accounts were consolidated, such would have been the result, and the question resolves itself into the right of the factors to keep the plantation account open with its privilege, and to appropriate the proceeds of the crop of 1846 to the use of the owner.   That the crop belonged to him is not questioned, and there is nothing before us upon which his right to dispose of it as he has done can be contested.   There is no allegation or evidence of fraud, nor any violation of the rights of the mortgage creditors upon the crop of 1847.   See *Williams* v. *Duer*, 14 La. 537.   As the case is before us, we are not authorized to disturb or change the accounts as they have been kept between the parties.   The case of *Bloodworth* v. *Jacobs*, 2 An. Rep. 25, seems to us to be conclusive on this subject.

There is a charge in the account of $840 for eight mules, which is objected to as not being privileged under the statute.   The mules were bought for the plantation, and paid for by a third person, who was reimbursed by a draft on *Wright, Williams & Co.*, which was paid.   The mules we consider as coming within the words of the statute—*necessary supplies*.   The extinguishment of the vendor's privilege, which could have been exercised at any moment by the withdrawal of the animals from the working of the plantation, we think brings the advance by the factor within its fair legal intendment.   Acts of 1843, p. 44, ch. 70.

The next claim to be considered is that of *John E. Curtis*.   He had judgment for $600, for a year's wages as overseer of the Bristol plantation for the year 1846, and for $464 66 for his wages for eight months of the year 1847, making $1064 66, and he was decreed to have a privilege for this sum, and the sheriff was directed to satisfy it out of the sale of the Bristol plantation.   The plantation was sold in October, 1847, with the crop, and purchased by *Thomas P. Farrar*, the appellant.   We have nothing before us which enables us to refuse to allow to the overseer his wages for 1846, out of the funds under the control of the court.   Under article 3184 of the Code, he has his privilege for the wages of that year on the proceeds of the crop, in the ground, of 1847.   Such is the interpretation given to that article in cases in which the services of the overseer have been continuous for one whole year and the portion of another.

FARRAR
*v.*
ROWLEY.

*Succession of Johnson,* 3 Rob. 216.   *Welsh* v. *Shields,* 6 Rob. 484.   Ib. 12 Rob. 530.

In relation to the fact of the wages of 1846 having been paid, and the amount due for those of 1847, as it depends entirely on the credibility of the witnesses heard by the district judge, we do not feel authorized to interfere with his decision.

The next claim to be considered is the claim of the sheriff of the Parish of Concordia, who seized the two-thirds of the Marengo plantation and slaves, and kept possession of them from the 22d May, until the 7th of August, 1847. He alleges that he was obliged necessarily to incur expenses in the safe-keeping and preservation of said property, and asks the court to make a suitable allowance, " *say the sum of* $500 ;" and the court made the allowance, *for keeping the movable property and slaves.* It was stated in argument, and acquiesced in by counsel, that for all disbursements made by the sheriff, hire of keeper and supplies, the sheriff has paid himself out of the funds in his hands ; but the charge at present insisted upon is, for his responsibility and care generally, without any definite or distinct action. For this the sheriff is remunerated by the emoluments of his office. Sheriffs are bound to take care of property taken possession of by them, and are authorized to lay out money for its necessary preservation. They may appoint guardians for its safe custody, and the law, as we understand it, gives them ample authority for all just and proper expenditures, and the constitution imposes no obstacle to their reimbursement. But if the 71st article has any application to ministerial officers, it prohibits allowances of this kind. *Drew* v. *Chambliss, ante* p. 246. It is, therefore, decreed that, the judgment in favor of *Wright, Williams & Co.* be affirmed with costs ; that the judgment in favor of *John E. Curtis* be affirmed with costs ; and that the judgment in favor of *Isaac J. Course,* sheriff, be reversed, and his demand be dismissed, with costs in both courts.