## No. 9713.
### G. JACQUET vs. HIS CREDITORS.

Delivery of the thing pledged is essential to the validity of the contract of pledge.

What constitutes delivery depends on the nature of the object pledged and on the circumstances of the case.

The pledgee need not always have manual corporeal possession of the thing pledged.

A third person may be detainer of it by agreement between the parties. C. C. 3162.

The pledgor may have possession of the thing pledged for account of the pledgee. He occupies then the position of trustee or possessor. ad. hoc.

Under a cession of property the creditors of the insolvent do not acquire a right of owner-

ship in the property surrendered, but only the right of possession and the power of administration. The ownership remains in the insolvent. C. C. 2178, 2182.

If among the assets of the insolvent there be a thing pledged, the possession of it does not pass to the creditors, being vested in the pledgee. No man can transfer a greater right than he himself has.

The obligation of pledge is contractual. It vests in the creditor the right of possession and of privilege on the thing pledged. The right of detention being as much a part of the security as the things pledged are a part of the guaranty, the creditor cannot be deprived of same by the voluntary act (bankruptcy) of his debtor nor by the insolvent laws of the State. The obligation of contracts cannot be impaired.

Notwithstanding the pledgor's insolvency, the pledgee can proceed to sell the pledge in the way stipulated by the contract.

A power of attorney, coupled with an interest, is not revoked by the death or bankruptcy of the principal. Article 3027 of the Civil Code applies to a gratuitous mandate.

APPEAL from the Civil District Court for the Parish of Orleans. *Rightor,* J.

---

*T. J. Semmes & Legendre* for Plaintiff and Appellant:

Delivery of the thing pledged is essential to the validity of the contract of pledge.

What constitutes delivery depends on the nature of the object pledged and on the circumstances of the case.

The pledgee need not always have manual corporeal possession of the thing pledged.

A third person may be detainer of it by agreement between the parties. C. C. 3162.

The pledgor may have possession of the thing pledged for account of the pledgee. He occupies then the position of trustee or possessor *ad hoc.*

Pothier Pandectes, V. VIII, p. 360; C. N 2076; Story on Bailments, 299; 96 U. S. 476; 32 Ann. 1252; 33 Ann. 973; Jones on Pledges, §§ 35, 37.

Under a cession of property the creditors of the insolvent do not acquire a right of ownership in the property surrendered, but only the right of possession and the power of administration. The ownership remains in the insolvent. C. C. 2178, 2182; 3 Ann. 387; 4 Ann. 49.

If among the assets of the insolvent there be a thing pledged, the possession of it does not pass to the creditors, being vested in the pledgee. No man can transfer a greater right than he himself has. 5 Ann. 274,

The obligation of pledge is contractual. It vests in the creditor the right of possession and of privilege on the thing pledged. The right of detention being as much a part of the security as the things pledged are a part of the guaranty, the creditor cannot be deprived of same by the voluntary act (bankruptcy) of his debtor nor by the insolvent laws of the State. The obligation of contracts cannot be impaired. U. S. Const., Art. 1. sec. 10; State Const., Art. 155.

Notwithstanding the pledgor's insolvency, the pledgee can proceed to sell the pledge in the usual way, 94 U S. 73, Jerome vs. McCarter; 16 Wallace, 557; 95 U. S. 764, Yeatman Savings Bank; 1 Ann. 31, Rasch vs. His Creditors; 67 Ala. 168.

A power of attorney, coupled with an interest, is not revoked by the death or bankruptcy of the principal. Article 3027 of the Civil Code applies to a gratuitous mandate. Story on Agency (ed. 1862), secs. 164, 173, 477, 483, 489; Livermore on Agency (ed. 1818), sec. 30; 1 Bell's Comm. on Agency, sec. 413 (4th edition); Addison on Contracts, Vol. 2, p. 609 (ed. 1876); 34 N. Y. 24, Hutchins vs. Hibbard; 54 Maine, Goodwin vs. Burden; 91 U. S. 521, Eyster vs. Gaff et al.; 8 Wheaton, 174, Hunt vs. Rousmanier's Adm's, 'the leading case on the subject; 60 Tex. 680, Bray vs. Aiken; 118 Mass. 554, Hall vs. Bliss; 34 Ann. 1187; 2 Ann. 624.

A creditor cannot have the contracts of his debtor annulled unless he proves fraud or injury. Courts will not annul the title of property when the party seeking their interposition cannot possibly take relief from the granting of the remedy invoked. N. O. Ins. Ass. vs. Labranche, 31 Ann. 840; Copeland vs. Labatut, 6 Ann. 61; Barrett vs. Emmerson, 8 Ann. 503; Bay vs. Roseberry. 8 Biss. 102; 9 Ann. 539; 11 R. 533; 9 Ann. 602; 6 Ann. 361

*A. J. Murphy* for Defendant and Appellee.

The opinion of the Court was delivered by

Todd, J.    The facts of this case are briefly these:

E. B. Curtis was a creditor of Jacquet & Vallette for $1,400. As security for this debt they executed a pledge by private act on the 21st of June, 1884, of certain machinery used for the manufacture of tobacco, at No. 44 St. Peter street, of this city, consisting of boilers, engines, cutters, etc.

By the terms of the contract, the pledgee was specially authorized to sell the property if the debt was not paid at its maturity. It was not paid, and on the 8th of April, 1885, the property was sold at public auction after proper advertisement, and bought in by William P. Curtis.

On the 30th of March, 1885, Jacquet & Vallette went into insolvency. On the 18th of May, 1885, the syndic of the insolvents obtained an order for the sale of all the property belonging to the estate, and among the property advertised for sale was the machinery, etc., pledged to E. B. Curtis as stated. W. P. Curtis, the purchaser of the property, on the 8th of April, as mentioned, enjoined the sale, claiming that the property belonged to him under his said purchase.

The answer of the syndic embraced substantially the following defenses to the action:

1st.    That the property at the date of the cession of the insolvents belonged to them, and by the effect of the cession the title thereto passed to their creditors.

2d.    It was denied there was a legal pledge of the property, for the reason that it remained in the possession of the insolvents until their surrender.

3d.    The sale to W. P. Curtis was charged with nullity on the ground that no legal sale could have been made after the cession, except under the order of the court.

There was judgment in favor of the syndic, dissolving the injunction and dismissing the suit, and W. P. Curtis has appealed.

We find in the record no reasons assigned by the district judge for his judgment, and we have not been favored with any argument, oral or written, by the appellee's counsel.

## I.

That the title of the property at the date of the surrender was in the insolvents, is true, but it is not true that the effect of the cession was to convey their title to the creditors. On the contrary, by positive provision of our law the insolvent debtor " preserves his ownership of the property surrendered." The possession passes to the creditors when there is no legal obstacle to its transmission. C. C. 2178, 2182 ; 3 Ann. 387 ; 4 Ann. 49.

## II.

The contract of pledge stipulated that the property pledged was placed in the possession of one Joaquin Polet, as the agent of the pledgee, and he (Polet) intervened in the act for the purpose, as expressed, " of accepting the trust;" and it is shown by the evidence that to him was delivered the key of the building containing the machinery, etc., pledged. He (Polet) testified that he exercised control over the property for about ten months, and took care of it and cleaned the machinery. He was paid for his services as keeper. It is shown that by permission of the keeper and consent of Curtis, Jacquet & Vallette used the machinery at times in their tobacco business, and that Polet was one of their employees. We do not think, however, that these facts derogated from the validity of the pledge. The possession of the property by the pledgee, as shown, was sufficient. C. C. 3162 ; Weems vs. Moss Company, 33 Ann. 973. In fact, the property pledged may be left in the possession of the debtor himself, provided his possession is precarious and clearly for account of the creditor. Conger vs. City, 32 Ann. 1250.

## III.

Was the pledgee authorized to sell the property pledged after the cession of the insolvents ?

It is true, as a general rule, that a mandate is terminated by the death or failure of the principal. C. C. 3027. Where the mandate is gratuitous this is undoubtedly so, and a mandate is presumed, under our law, to be gratuitous unless the contrary appears by the terms of the mandate.

In this instance the contract of pledge, under which the authority of the pledgee is granted to sell the property if the debt was not paid, shows that the mandate was coupled with an interest—that is, that the mandatory was put in possession of the property to secure a debt owing him, and authorized to sell and receive the proceeds of sale to pay the debt.

In the case of Rasch vs. His Creditors, 1 Ann. 31, it was expressly held that a pledge is left intact by the insolvency of the debtor, and

the right is still possessed by the pledgee to cause the sale of the property pledged and the proceeds applied to the extinguishment of the debt. See, also, Hoey on Agency, secs. 164, 173, 477, 483, 489 ; Hunt vs. Rousmanier's Adm., 8 Wheaton, 174. In the case of Jerome vs. McCarter, 94 U. S., it was decided that, after the assignment of the debtor and pledgor, the pledgee could proceed and sell the pledged property in accordance with the terms of the contract.

We think this is the correct doctrine, and hence it follows that the sale made by Curtis, the pledgee of the property in this instance, was a legal one, and that the plaintiff acquired the ownership of same under his purchase at said sale.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower court be annulled, avoided and reversed, and that the plaintiff, William P. Curtis, be declared owner of the machinery at No. 44 St. Peter street, in the city of New Orleans, consisting of boilers, engines, cutters, etc., bought by him at auction sale on the 8th of April, 1885, and that the injunction taken out by him be perpetuated, and that Jno. C. F. Waldo, syndic of the insolvent estates of G. Jacquet and E. M. Vallette, pay costs of both courts.