it was a minor, or nonresident, or foreigner, or otherwise disqualified, if he was registered.

=====

(59 South. 816.)

No. 19,425.

LOEB v. COLLIER, Sheriff, et al.

In re LOEB.

(June 19, 1912. Rehearing Denied Oct. 21, 1912.)

*(Syllabus by the Court.)*

1. COURTS (§ 224*)—SUPREME COURTS—JURISDICTION.

The control and general supervision over all inferior courts vested by article 94 of the Constitution in the Supreme Court is both a plenary and a discretionary power, the exercise whereof must depend upon the features of each individual case.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 608–618; Dec. Dig. § 224.*]

2. AGRICULTURE (§ 13*)—LIENS—EFFECT OF SEVERANCE OF CROPS.

The privilege granted by C. C. art. 3217, upon the crops of the year for necessary supplies, ceases when the things upon which it rests cease to be crops. The purchaser of agricultural products from the planter buys them subject to any crop liens that may rest upon them; but, when such purchaser sells them, they enter the channels of trade, and become merchandise.

[Ed. Note.—For other cases, see Agriculture, Cent. Dig. §§ 31–37; Dec. Dig. § 13.*]

Action by Herman Loeb against B. T. Collier, sheriff, and others. Judgment sustaining privilege of A. McCranie for supplies furnished. Herman Loeb applies for writs of certiorari and prohibition. Judgment reversed, and entered in favor of plaintiff.

Richardson & Richardson, of Homer, for relator. Barnette, Roberts & Goff, of Arcadia, for respondent.

SOMMERVILLE, J. A. McCranie furnished the necessary supplies to enable Hezekiah Kendrick to grow his 1911 crop. Kendrick deposited with the Homer Compress Company a bale of cotton raised by him in 1911, and took a receipt for the same. J. R. Madden advanced Kendrick $17 on the warehouse receipt, and a week or 10 days thereafter bought the bale of cotton from Kendrick, paying the balance of the purchase price in money. On September 30, 1911, Madden sold this bale to Herman Loeb, a cotton buyer of Shreveport, through Loeb's agent, Palmer.

McCranie, setting up his privilege as a furnisher of supplies, sequestered the bale of cotton. Loeb claims ownership. The district court having rendered judgment sustaining McCranie's privilege, Loeb has invoked the supervisory jurisdiction of this court.

[1] The respondent judge urges that, there being no irregularity in the instant case, our supervisory jurisdiction cannot be properly invoked. It is true that, as a general rule, certiorari can issue only in cases in which the regularity of the proceedings of the trial court is attacked, but the Constitution lodges in the Supreme Court control and general supervision over all inferior courts. The power thus granted is plenary, and its exercise rests in the sound discretion of the court. Thompson & Co. v. Gosserand, 128 La. 1029, 55 South. 663; State ex rel. Union Sawmill Co. v. Summit Lumber Co., 117 La. 643, 42 South. 195. As once said by Mr. Justice Manning, "We are not disposed to sacrifice an estate to a definition," and are of the opinion that cases may be presented involving questions of such moment as to make it our plain duty, under article 94, to investigate the points of law involved, though there be no complaint of "irregularity below." The present controversy is of that nature.

Privileges are in derogation of common right, and secret liens hamper commerce, hence privileges are strictly construed, and secret liens are not favored.

[2] C. C. art. 3217, provides:

"That debts which are privileged on certain movables are the following:

"(1) * * * Debts due for necessary sup-

plies furnished to any farm or plantation * * * on the crops of the year and the proceeds thereof."

It has been uniformly held that the purchaser of a growing crop is charged with presumptive knowledge of the privilege of the furnisher of supplies, and buys subject to such privilege (Weill v. Kent, 107 La. 322, 31 South. 761, and 52 La. Ann. 2139, 28 South. 295; Garcia v. Garcia, 7 La. Ann. 526; Welsh v. Barrow, 3 La. Ann. 133), and it was held in National Bank of Commerce v. Sullivan (Oil Co., Intervener), 117 La. 163, 41 South. 480, that:

"The privilege for advances conferred by Civil Code, art. 3217, is not confined to the growing crop, but bears upon the products after they are severed from the soil, and follows them into the hands of a purchaser, who, buying directly from the planter, is presumed to know that such privilege may or actually does exist."

In that case the intervener not only had bought directly from the planter, but had bought while the crop was in the ground, and for future delivery; besides, constructive knowledge of the existence of plaintiff's lien, the efforts of intervener, aided and abetted by the defendant, to "run the crop off," plainly disclose an actual knowledge of plaintiff's privilege.

The state of facts presented in the instant case is altogether different from that passed upon in the cases hereinabove quoted and relied upon by the respondent judge, and must lead to different conclusions. It may well be that when Madden bought from Kendrick he bought a portion of the crop and acquired the cotton cum onere, but surely in Madden's hands it was no longer a crop. It had become an article of commerce, had gone into the channels of trade, and was merchandise pure and simple.

Louisiana is an agricultural state, and its prosperity largely depends upon agriculture. To enable the farmer to make his crop, the privilege of the furnisher of supplies must be recognized, and must be adequately protected. This protection is assured by the enforcement of the privilege upon the crop, or, if sold, upon the proceeds thereof, and by charging the purchaser from the planter with knowledge that that crop is bought subject to any liens that may be upon it at the time of his purchase. As long as the agricultural product remains in the hands of the farmer or planter, it is a crop and nothing else; but, when his vendee parts with ownership the agricultural product can no longer be considered a crop, it has become merchandise; hence it necessarily follows that the lien is gone. If this were not true, it would be unsafe for any one at any time to buy from anybody a bale of cotton, a sack of rice, or a pound of sugar. If the lien rested on the thing until the furnisher of supplies has been paid, not only might cotton bought in open market from a merchant, and on shipboard, and for which a bill of lading had been issued and transmitted to the foreign buyer, be sequestered, but the rice in the family storeroom, the sugar or molasses on the breakfast table would be subject to sequestration by the unpaid furnisher of supplies. To entitle the lienholder to his writ, he would simply have to establish identity. Such an interpretation of the statute is not only not justified by the lawgiver's language, but would practically paralyze our entire commerce; that commerce being almost wholly of agricultural products.

It is therefore ordered, adjudged, and decreed that the judgment herein rendered by the district court on April 26, 1912, be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff, with costs of both courts, decreeing plaintiff to be owner of the bale of cotton described in his petition, free of any lien or privilege in favor of A. McCranie.