(91 South. 143)

No. 24591.

ROGER v. MILLIKEN & FARWELL.

In re MILLIKEN & FARWELL.

(June 15, 1921. On Rehearing, Jan. 2, 1922.)

*(Syllabus by Editorial Staff.)*

**1. Agriculture ☞15½—Overseer having lien on crop held not to have right of action against inferior lienor selling crop.**

Though the lien of an overseer of a plantation on a crop and proceeds thereof, under Act No. 89 of 1886, was superior to that of a furnisher of money and supplies for making the crop, and also superior to such furnisher of supplies having a lien as a pledgee under Act No. 66 of 1874, but, in pursuance of the owner's contract with such pledgee the crops were sent to it for sale, and the proceeds which were less than the amount of pledgee's lien, were with the owner's consent applied thereto, the overseer had no remedy by personal action against the pledgee lienor.

**2. Agriculture ☞15½—No cause of action exists against pledgee who sold a crop on which an overseer had a lien.**

In view of Code Prac. art. 28, providing that a personal action cannot arise except upon contracts, quasi contracts, offenses, and quasi offenses, an overseer, who had a lien on a crop raised by him, cannot maintain an action for the amount of his lien against one who sold the crop and applied its proceeds on a debt due him from the owner under Act No. 66 of 1874, giving a lien for money furnished to make a crop, where no contractual relation existed between the overseer and the pledgee, and the pledgee was not guilty of any quasi offense, wrongdoing, or fault.

Action by M. E. Roger against Milliken & Farwell. In re Milliken & Farwell applying for writ of certiorari or review to the Court of Appeal, Parish of Orleans. From a judgment dismissing the case plaintiff appealed to the Court of Appeal for the Parish of Orleans, where the judgment was reversed, and the case remanded for trial. Plaintiff's demand was rejected, from which he again appealed to the Court of Appeal, where the judgment was annulled and rendered in his favor, on which writs of certiorari and review were issued at the instance of defendant. Judgment of the Court of Appeal annulled, and judgment of the civil district court, rejecting plaintiff's demand, affirmed.

Grant & Grant, of New Orleans, for applicant.

Guion & Lambremont, of New Orleans, for respondent.

O'NIELL, J. In the year 1914, Milliken & Farwell, commission merchants in New Orleans, under a contract with Stephen E.

Roger, furnished him the necessary money and supplies to cultivate a crop of sugar cane on his plantation in the parish of Assumption. By the terms of the contract, the crop was pledged to Milliken & Farwell, according to the provisions of Act 66 of 1874, and it was stipulated that the sugar and molasses should be shipped to Milliken & Farwell, and that they would sell the same and apply the proceeds to the payment of the advances made on the crop, as well as to any other indebtedness due by Stephen E. Roger to Milliken & Farwell. The advances made by Milliken & Farwell for the year 1914 amounted to $56,309.43. The proceeds of the crop amounted to $55,461.19, leaving a deficit of $848.24. Stephen E. Roger also owed Milliken & Farwell a balance of $8,215.98 for advances made previous to the year 1914. The account was closed on the 31st of May, 1915, showing an indebtedness of $9,064.22 owed by Stephen E. Roger to Milliken & Farwell.

On the 30th of December, 1915, Mederic E. Roger, son of Stephen E. Roger, brought suit against Milliken & Farwell in the civil district court for the parish of Orleans, for $1,172.84, alleged to be due and owing to him by Stephen E. Roger, for his salary as overseer on the plantation during the year 1914. The basis of plaintiff's suit was that he had had a lien or privilege on the crop of that year, and the proceeds thereof, superior to any lien or privilege in favor of Milliken & Farwell.

The suit was allotted to the division of the court presided over by the late Judge T. C. W. Ellis, and was by him dismissed on an exception of no cause of action. Plaintiff appealed to the Court of Appeal for the Parish of Orleans, where the judgment was reversed and the case remanded for trial. The case was then put at issue, and was tried before Judge Hugh C. Cage, successor of the late Judge T. C. W. Ellis. In answer to the suit, Milliken & Farwell averred, and on the trial they proved, the facts stated above, showing that there was nothing due to Stephen E. Roger from the proceeds of the crop of the year 1914. On that showing, Judge Cage rejected plaintiff's demand. Plaintiff again appealed to the Court of Appeal, where the judgment was annulled and judgment was rendered in favor of plaintiff for $572.84, with legal interest from December 30, 1915, and all costs. The case is before us on writs of certiorari and review issued at the instance of defendant, Milliken & Farwell.

[1] The facts of the case are not disputed. Plaintiff's father, by whom he was employed, owed him a balance of $572.84 on his salary as overseer on the plantation for the year 1914. By the terms of Act 89 of 1886 (p. 127), the lien or privilege securing the wages or salary of an overseer, on the crop cultivated by him and the proceeds thereof, is superior to the lien or privilege in favor of a furnisher of money and supplies for making the crop, and is even superior to the lien or privilege in favor of a pledgee of the crop, under the provisions of Act 66 of 1874. Therefore, inasmuch as the amount that was due to Milliken & Farwell for the advances made during the year 1914 exceeded the proceeds of the crop of that year, there is no occasion for considering at all the additional indebtedness of $8,215.98 owed by Stephen E. Roger to Milliken & Farwell for advances made previous to the year 1914.

The facts of this case bring it squarely within the doctrine announced in the very recent decision by this court, in Union Seed & Fertilizer Co. v. J. Supple's Sons Planting Co. et al., 139 La. 692, 71 South. 949. The district court cited and followed that decision. The Court of Appeal undertook to distinguish it from this case. In principle, the two cases cannot be distinguished. In the case cited, the planting partnership of

M. Hanlon's Sons owed the Union Seed & Fertilizer Company $1,500 for fertilizer sold and delivered to M. Hanlon's Sons and used by them in the cultivation of their crop of sugar cane during the year 1911, which debt was secured by a lien or privilege on the crop and the proceeds thereof. The J. Supple's Sons Mercantile Company advanced to M. Hanlon's Sons the necessary money and supplies to cultivate the crop of 1911, to the amount of $35,000. In accordance with the terms of the contract between the mercantile company and M. Hanlon's Sons, the crop of sugar cane was delivered to the J. Supple's Sons Planting Company, by whom it was converted into sugar and sold, and the proceeds, amounting to $46,000, were paid by the J. Supple's Sons Planting Company to the J. Supple's Sons Mercantile Company. The mercantile company applied the proceeds, $46,000, to the extinguishment of the debt due for advances for that year, $35,000, and retained the balance, $11,000, in satisfaction of ordinary unsecured debts due by M. Hanlon's Sons to the mercantile company. Thereafter the Union Seed & Fertilizer Company brought suit against J. Supple's Sons Planting Company and J. Supple's Sons Mercantile Company, praying for a judgment against them in solido for the $1,500, on the facts hereinabove stated. This court ruled that the Union Seed & Fertilizer Company had no cause or right of action against either defendant, the J. Supple's Sons Planting Company or the J. Supple's Sons Mercantile Company. The opinion was expressed thus:

"The debt due by M. Hanlon's Sons to the plaintiff for the fertilizer furnished and used for the cultivation of the crop of 1911 was secured by a lien or privilege on the crop and the proceeds thereof. R. C. C. art. 3217. The proceeds of the crop consisted of the credit due to M. Hanlon's Sons from the sale of the crop; and that credit vanished when, with the consent of M. Hanlon's Sons, it was applied to the payment of their debts."

Paraphrasing the decision of the case cited, the debt due by Stephen E. Roger to the plaintiff for his services or salary as overseer in the cultivation of the crop of 1914 was secured by a lien or privilege on the crop and the proceeds thereof. The proceeds of the crop consisted of the credit due to Stephen E. Roger from the sale of the crop; and that credit vanished when, with the consent of Stephen E. Roger, it was applied to the payment of his debts.

[2] In the case cited, we made the trite statement, embodied in article 28 of the Code of Practice, which is applicable here, that a personal action cannot arise except from one of the four causes that give rise to personal obligations, viz. contracts, quasi contracts, offenses, and quasi offenses. It is not pretended that the firm of Milliken & Farwell was under any contractual obligation or quasi contractual obligation in favor of the plaintiff in this suit, or that the firm of Milliken & Farwell was guilty of any crime or offense. It is also certain that the firm of Milliken & Farwell was not guilty of any quasi offense, wrongdoing or fault, in applying the proceeds of the sugar and molasses sold by the firm, as far as it would go, to the extinguishment of the debt due the firm for advances made for making the crop. In fact, it is not alleged or contended by plaintiff that the firm of Milliken & Farwell was guilty of fraud or conspiracy with Stephen E. Roger, in receiving and selling the crop and applying the proceeds to the debt owed by Stephen E. Roger. There is therefore no cause for which a personal action can be maintained by plaintiff against Milliken & Farwell.

If plaintiff had resorted to garnishment proceedings against Milliken & Farwell, the latter would have shown, in answer to interrogatories propounded, that the garnishee was not indebted to plaintiff's debtor, Stephen E. Roger, and that showing would have

put an end to the proceedings against the garnishee. On the same showing, Milliken & Farwell cannot be held liable in a personal action for the debt owed by Stephen E. Roger to plaintiff.

As suggested by the district judge in his written opinion, the situation is the same as if Stephen E. Roger personally had sold his sugar and had paid the identical money or check or draft, representing the proceeds, to Milliken & Farwell. Let us suppose that Stephen E. Roger had sold a few barrels of his sugar and, with the identical money or check or draft received for the price, had paid a merchant to whom he owed an unsecured debt. Would the latter therefore be personally liable to the plaintiff in this suit? If so, so would be the corner grocer, the family physician, the butcher, the baker, the candlestick maker—every individual—to whom Stephen E. Roger may have paid a debt with a part of the proceeds of his crop of 1914, be liable in solido to the plaintiff in this suit and to every other creditor who once had a superior lien or privilege on the crop.

The Court of Appeal, in the opinion rendered in this case, quoted with approval decisions which were expressly overruled by this court in Union Seed & Fertilizer Company v. J. Supple's Sons Planting Company et al., in so far as they were in conflict with the opinion rendered in that case. We took occasion in that case to review and analyze all of the jurisprudence upon this subject; and we observed then that the apparent confusion in the jurisprudence had arisen from a misapplication of a doctrine which was properly applied in Succession of Johnson, William Kennedy et al., Appellants, 3 Rob. 216. Referring to the lien or privilege of an overseer, the court there said:

"The privilege as to the last year's crop may be exercised, it would seem, upon the proceeds, after the crop has been sent to market and sold."

In that case, however, the employer of the overseer had died; and his vacant succession was represented by a curator, who held the proceeds of the year's crop, identified and segregated. The proceeds belonged to the succession of the deceased employer of the overseer, and there was no reason why the latter's lien or privilege should not have been recognized on the account filed by the curator of the vacant succession. The expression quoted from that opinion was apparently misapplied to the facts of the case of Welsh v. Barrow, 3 La. Ann. 133, unless it be that the purchaser of the plantation and growing crop in the latter case yet held the proceeds due to the seller of the plantation and crop at the time he was sued by the overseer. That may have been the case, for the court said:

"We do not understand on what principle he [meaning the overseer] can be deprived of it [meaning his lien or privilege] when the proceeds are in defendant's pocket."

For the reasons which were pointed out in our opinion in Union Seed & Fertilizer Co. v. J. Supple's Sons Planting Co. et al., the case of Welsh v. Barrow should not be regarded, as the Court of Appeal characterized it as "the leading case upon the subject."

Referring to certain expressions in the opinion in Weill v. Kent, 107 La. 322, 31 South. 761, quoted with approval by the Court of Appeal in this case, which are in direct conflict with the opinion which we rendered in Union Seed & Fertilizer Co. v. J. Supple's Sons Planting Co. et al., we said, in our opinion in the latter case:

"Any expression to the contrary in Weill v. Kent, 107 La. 322, 31 South. 761, is in conflict with the provisions [of articles 27 to 32, inclusive] of the Code of Practice, and must be, and is now, overruled."

We also said, in Union Seed & Fertilizer Co. v. J. Supple's Sons Planting Co., that the decision in National Bank of Commerce v. Sullivan, 117 La. 163, 41 South. 480, was

not that a purchaser of agricultural products was personally liable for any unrecorded liens or privileges on the crop; and we said that the decision could not be regarded as authority for the proposition that unrecorded liens or privileges follow agricultural products into the hands of a purchaser in good faith.

The Court of Appeal quoted also from Loeb v. Collier, 131 La. 377, 59 South. 816, that a purchaser of agricultural products from a farmer takes them subject to unrecorded liens. In that case, the agricultural product, being cotton, was identified as that on which advances had been made to the farmer by one McCranie, and on which he had had a lien or privilege to secure the debt due for the advances. In fact, the cotton was sequestered in the suit of McCranie against the farmer. But the farmer had previously stored the cotton, and had taken a receipt for it from the compress company. He had pledged the receipt for a loan, and had subsequently sold the cotton to the pledgee, and the latter had sold it to Loeb, who arrested the seizure and sale by an injunction against the sheriff. Therefore what was said to the effect that McCranie's lien had effected the cotton in the hands of the original purchaser from the farmer was merely a matter of academic discussion. The ruling in the case was that McCranie's lien was lost. The expressions of opinion which were appropriate to the facts then before the court were:

"As long as the agricultural product remains in the hands of the farmer or planter, it is a crop and nothing else; but, when his vendee parts with ownership the agricultural product can no longer be considered a crop; it has become merchandise; hence it necessarily follows that the lien is gone. If this were not true, it would be unsafe for any one at any time to buy from anybody a bale of cotton, a sack of rice, or a pound of sugar. If the lien rested on the thing until the furnisher of supplies has been paid, not only might cotton bought in open market from a merchant, and on shipboard, and for which a bill of lading had been issued and transmitted to the foreign buyer, be sequestered, but the rice in the family storeroom, the sugar or molasses on the breakfast table would be subject to sequestration by the unpaid furnisher of supplies. To entitle the lienholder to his writ, he would simply have to establish identity. Such an interpretation of the statute is not only not justified by the lawgiver's language, but would practically paralyze our entire commerce; that commerce being almost wholly of agricultural products."

The judgment of the Court of Appeal is annulled, and the judgment of the civil district court, rejecting plaintiff's demand, is affirmed, at his cost.

MONROE, C. J., concurs in decree.

On Rehearing.

DAWKINS, J. A further consideration of the issues involved in this case has convinced us of the correctness of our former conclusions, and our former decree is accordingly reinstated and made the final judgment of this court.

MONROE, C. J., dissents.