(93 South. 196)

No. 25237.

**PURITY FEED MILLS CO., Inc., v. MOORE (BANK OF ACADIA, Intervener).**

**In re BANK OF ACADIA.**

(June 27, 1922.)

*(Syllabus by Editorial Staff.)*

1. **Agriculture ⬡12—Chattel mortgages ⬡138(1)—Do not affect privilege of furnisher of supplies; privilege of furnisher of supplies need not be recorded.**

The privilege of one furnishing supplies for the making of a crop did not have to be recorded, and where it existed when a chattel mortgage was given it was not affected by the mortgage.

2. **Agriculture ⬡13—Privilege of furnisher of money or supplies superior to rights of holder of receipt.**

Under Const. 1913, art. 187, Const. 1921, art. 19, § 19, relative to privileges on movable property, and Act No. 221 of 1908, § 41, relative to the rights acquired by one to whom a negotiable warehouse receipt is negotiated, the privilege of a furnisher of money or supplies for the making of a crop is superior to the rights of the holder of a warehouse receipt for the crop.

Certiorari to Court of Appeal, First Circuit.

Suit by the Purity Feed Mills Company, Inc., against Leodice Moore, in which the Bank of Acadia intervened. A judgment in favor of the intervener was reversed by the Court of Appeal, and it applies for certiorari or writ of review. Affirmed.

Philip S. Pugh, of Crowley, for plaintiff.

Medlenka & Bruner, of Crowley, for intervener.

By Division C, composed of Justices DAWKINS, ST. PAUL, and THOMPSON.

DAWKINS, J. Plaintiff sequestered 468 sacks of rice, property of defendant, and claimed a privilege as furnisher of supplies for making the crop. The Bank of Acadia intervened, also asserting a privilege as the furnisher of money for said crop, and, in addition thereto, superior privileges as pledgee of certain warehouse receipts covering 287 sacks and a chattel mortgage upon the remaining 181 sacks of said rice.

The district court recognized the privileges of plaintiff and intervener, but held the latter's superior to that of the former in virtue of the chattel mortgage and warehouse receipts. The Court of Appeal reversed the judgment in so far as it gave a preference to intervener, and ordered that the two claimants be paid concurrently from the proceeds of said rice, holding the mortgage and pledge ineffectual as to the rights of plaintiff.

Intervener applied to us for certiorari and the matter is now before us for review.

Opinion.

There is no serious dispute as to the facts. Plaintiff furnished supplies to the extent of $1,218 to make the crop, and intervener furnished money for the same purpose, amounting to $1,700. Four hundred and sixty-eight sacks of rice were produced, and on October 26th of the same year (1920) defendant, Leodice Moore, executed in favor of the intervening bank a chattel mortgage upon 181 sacks which were in barn; the other 287 sacks he placed in a warehouse, obtained what was supposed to have been negotiable warehouse receipts therefor, which, together with the chattel mortgage, were given to the bank to further secure the said debt of $1,700.

The question to be determined is as to whether the bank acquired by the mortgage and pledge of the warehouse receipts any greater rights, as against the claim of plaintiff, than were enjoyed before.

Plaintiff's counsel has discussed at length the question of the authority of the warehouseman to issue negotiable receipts, in the sense of the Uniform Warehouse Receipts

Act (No. 221 of 1908); but, in view of the fact that the bank appears to have taken them in good faith, and without any actual knowledge of the alleged failure of the warehouseman to comply. with the law, we shall pass to a consideration of the other issues of law, not finding it necessary to decide that question at this time.

Plaintiff asserts its privilege under article 3217 of the Revised Civil Code, which, prior to the enactment of the Uniform Warehouse Receipts Act, and the Chattel Mortgage Law (Act No. 198 of 1918), had been held to prime the claims of a purchaser or pledgee, until the crop had passed into and become a part of commerce. Weill v. Kent, 52 La. Ann. 2139, 28 South. 295; Id., 107 La. 322, 31 South. 761; National Bank v. Sullivan, 117 La. 163, 41 South. 480; and Loeb v. Collier, 131 La. 378, 59 South. 816.

Unless, therefore, the Warehouse Receipts Act and the Chattel Mortgage Law, by some provision of their own, have repealed or modified this interpretation, plaintiff's lien has not been affected.

#### The Chattel Mortgage.

[1] Plaintiff's privilege against the rice existed when the chattel mortgage was taken, and did not have to be recorded. Weiss v. Hudson Construction Co., Ltd., 151 La. 1, 91 South. 525; Continental Bank v. Suc. McCann (No. 24837) 151 La. 555, 92 South. 55. Hence it was not affected by the mortgage.

#### The Warehouse Receipts.

[2] In the case of Parker Co. v. Martin & Co., 148 La. 802, 88 South. 68, we found that, in its purpose to give to public warehouse receipts negotiability, the Act 221 of 1908, by section 49, had expressly declared that no "seller's lien" should prime the claim of a bona fide holder in good faith of such receipts. However, we find no such express provision as to the lien and privilege of the furnisher of money and supplies to make the crop upon agricultural products. On the other hand, the act (section 41) declares that a person to whom a negotiable receipt is negotiated, acquires thereby:

"(a) Such title to the goods as the person negotiating the receipt to him had or had ability to convey to a purchaser in good faith for value, and also such title to the goods as the depositor or person to whose order the goods were to be delivered by the terms of the receipt had or had ability to convey to a purchaser in good faith for value."

Hence it would seem that the lawmakers studiously refrained from saying that negotiation should pass an unconditional and unincumbered title, good as against the world, but only such title as the owner or holder had or could convey to a purchaser in good faith. Prior to the passage of that act, the owner of such products could not pass an unincumbered title to a purchaser without knowledge of the existence of a privilege such as that of plaintiff, as we have heretofore shown, and the statute does not purport to enlarge such powers, but seems rather to expressly restrict the owner's right to transfer so as to preserve such privileges. It deals in detail with the rights of persons who have *voluntarily* allowed the holder of such property to handle it in a manner calculated to mislead third persons, as also those who have sold and parted with possession without collecting the price. But we find no provision which, expressly or by fair implication, destroys the prior rights of third persons, not necessary to be recorded, without their knowledge or consent.

"Privileges on movable property," says the Constitution (article 187 of 1913, and article 19, § 19, of 1921), "shall exist without registration of same, except in such cases as may be prescribed by law." In the present class of privileges, we have seen, the Legislature has not acted, and they therefore have full effect without recordation.

If the law were such as contended by intervener, the furnishing of supplies would be a very hazardous business, for it would be a very easy matter for the producer to deposit his goods in a warehouse and negotiate the receipts, or dispose of them in a way to defeat the furnisher's lien.

For the reasons assigned, the judgment of the Court of Appeal is affirmed, at the cost of the applicant.