## ALEXANDRIA PRODUCTION CREDIT ASS'N v. HORN et al.

### No. 6161.

Court of Appeal of Louisiana. Second Circuit.

Nov. 1, 1940.

Rehearing Denied Nov. 29, 1940.

Writ of Certiorari and Review Denied Jan. 6, 1941.

Does the purchaser of baled cotton, affected by registered lien, privilege and pledge in favor of one who furnishes the necessary supplies to produce the cotton, become personally liable to said furnisher of supplies for the amount thereof, to the value of the cotton, no fraud or collusion as an incident of the purchase being alleged or proven?

Plaintiff advanced to G. R. Horn necessary supplies and money to enable him to plant and cultivate a crop of cotton, etc., during the year 1938, and to evidence the lien and privilege granted by law to secure payment of the account, written instrument to that effect, including a pledge, authorized by Sec. 1 of Act 66 of 1874, as amended by Act 93 of 1922, was executed and duly registered. Horn produced and ginned six bales of cotton which he delivered to Gaddis & Company, Inc., as a credit against an old account due by him to that firm. The net proceeds of the cotton amounted to $181.05. The account due plaintiff is $175. Gaddis & Company, Inc., resold the cotton and retained the proceeds.

Plaintiff instituted this suit against Horn and Gaddis & Company, Inc., to recover judgment against them in solido for the full amount of the account against Horn, and prayed for recognition of said lien, privilege and pledge on the cotton's proceeds. Horn did not defend the suit. Gaddis & Company, Inc., hereinafter referred to as defendant, filed a plea of misjoinder and excepted to the petition as disclosing neither a cause nor a right of action. The plea and the exceptions are based upon the legal conclusion that since the petition discloses that the cotton was purchased in good faith, has been sold, and neither it nor the proceeds thereof may be reached by seizure, plaintiff's lien, privilege and pledge have been destroyed, leaving to it no recourse whatever or personal action against defendant for said proceeds. The plea and the exceptions were overruled. From a judgment for plaintiff, as by it prayed for, Gaddis & Company, Inc., appealed.

As the issues raised by the plea and the exceptions are practically the same as the defenses tendered by answer, the plea and exceptions will be referred to and considered with the merits.

Sec. 1 of Act 66 of 1874, as amended by Act 93 of 1922, provides in substance that in addition to the privilege

R. A. Fraser, of Many, for appellant.

Richard B. Williams, of Natchitoches, for appellee.

TALIAFERRO, Judge.

The sole question, one of law, tendered herein is:

now conferred by law, Art. 3217 of the Civil Code, a planter or farmer may pledge or pawn any agricultural crop to secure payment of advances in money, goods and necessary supplies to enable him to plant and produce such crops, by entering into a written contract of pledge of said crops or any portion thereof; that the recorded contract: "shall give and confer upon the merchant or other person advancing the money, goods and necessary supplies for the production of said agricultural product, a right of pledge upon said crop, the same as if the said crop had been in the possession of the pledgee, to take rank in accordance with date of filing same for record; * * *".

Prior to adoption of this act, the right to effectively pledge a prospective or growing crop to the furnisher of supplies, was not possible under the laws of this state for the obvious reason that delivery, an essential element to the legal vitality of such a contract, was practically impossible. This act was designed to and does create in the pledgee a possession, fictive in character, upon which the pledge finds basis. The pledgor's possession in such circumstances is that of trustee. Jacquet v. His Creditors, 38 La.Ann. 863. This being true, if the pledgor disposes of the crops affected by the pledge, he violates the law and, in doing so, commits a tort.

Even before this act was passed, it was fairly well established by the jurisprudence that the purchaser of crops impressed with an unrecorded overseer's lien and privilege, became personally liable to the overseer for the amount of salary due him, not exceeding the value of the crops purchased. The proceeds of such crops, it was held, could be followed into the hands of the purchaser and subjected to the lien and privilege. Succession of Hugh B. Johnson, 3 Rob. 216; Welsh v. Barrow, 3 La. Ann. 133.

The principle announced in these cases is supported by many other cases since the passage of said act. See Weill v. Kent et al., 52 La.Ann. 2139, 28 So. 295; Id., 107 La. 322, 31 So. 761; National Bank of Commerce v. Sullivan, 117 La. 163, 41 So. 480; Loeb v. Collier, 131 La. 377, 378, 59 So. 816; J. E. Hewitt v. T. J. Williams, 47 La.Ann. 742, 17 So. 269; Hewett v. Williams, 48 La.Ann. 686, 19 So. 604.

However, the Supreme Court in the case of Union Seed & Fertilizer Company v. J. Supple's Sons Planting Company et al., 139 La. 692, 71 So. 949, expressly overruled prior jurisprudence on the subject and held specifically that if the evidence of a furnisher's lien, privilege and pledge is not recorded as required by the act, no personal liability is incurred by one in good faith who purchases the crop affected thereby; that the proceeds vanish when applied as a credit to ordinary obligations of the lienor, and may not be subjected to the lien. This holding was reaffirmed in: Roger v. Milliken & Farwell, 150 La. 657, 91 So. 143.

We have found no decision of the Supreme Court dealing with this question wherein the lien, privilege and pledge involved were reduced to writing and duly registered. A recorded lien and pledge was involved in Regional Agricultural Credit Corporation v. Elston, Prince & McDade, 183 So. 91, adjudicated by this court, but the facts therein, due to agreement of the parties, made it unnecessary to pass on the issue here presented. The decision turned on the ranking of privileges.

The Supreme Court in Purity Feed Mills Company, Inc., v. Moore, 152 La. 393, 93 So. 196, in a measure, harked back to the jurisprudence which was specifically overruled by Union Seed & Fertilizer Company v. J. Supple's Sons Planting Company, supra, without making any reference whatever to this overruling case. The contest in this latter case was between the furnisher of supplies, whose lien and privilege were not recorded, and the intervening bank who held a chattel mortgage on part of the rice produced and warehouse receipts against the balance of that crop. The court specifically held that neither the mortgage nor the preference rights flowing from ownership of the warehouse receipts primed the furnisher's lien and privilege, though unrecorded.

It seems to us that there is little or no difference in principle quoad the furnisher's lien and privilege between the rights of the purchaser of crops affected thereby and those of a person who loans money on the faith of or who acquires as owner, warehouse receipts issued on deposit of the affected crop. In passing, the court said:

" 'Privileges on movable property,' says the Constitution (article 187 of 1913, and article 19, § 19, of 1921), 'shall exist without registration of same, except in such

cases as may be prescribed by law.' In the present class of privileges, we have seen, the Legislature has not acted, and they therefore have full effect without recordation.

"If the law were such as contended by intervener, the furnishing of supplies would be a very hazardous business, for it would be a very easy matter for the producer to deposit his goods in a warehouse and negotiate the receipts, or dispose of them in a way to defeat the furnisher's lien."

■ Registry is a creature of necessity. When done pursuant to legal requirement there flows therefrom definite results other than the bare perpetuation of the record of the instrument. From the very nature of such matters this is as it should be. Third persons, without actual knowledge, are constructively held to know of the registry of instruments and their contents. They are presumed to understand the significance of the registry of a particular document, the contents thereof, and the flow of legal effect therefrom. If this were not true, little comfort and meager benefits and protection would follow the act of registry.

■ The act of 1874 and the amendment specifically provide that when the written instrument therein described is recorded, that fact alone would confer upon the furnisher of supplies "a right of pledge upon said crops", etc. The contract of pledge, its nature and significance, find an important place in our system of laws. It is of the essence of such a contract that possession, actual or fictive, in the pledgee be present to effectively give rise to it.

■ From the foregoing premise, it follows that all persons, including the defendant, were impressed with knowledge of the existence of the pledge of crops and recorded lien by Horn to plaintiff to enable him to secure advances indispensable to their production, and that such crops were in the possession of Horn as plaintiff's trustee; and in dealing with him, in these circumstances, defendant assumed the risk involved and for all legal intents and purposes, became a joint tortfeasor with Horn in disposing of the cotton.

■ Plaintiff coupled with his suit the foreclosure of a chattel mortgage. Defendant prayed, in the alternative, that the net proceeds of the sale of the mortgaged property be credited against any judgment rendered against it. The lower court correctly so decreed.

It is our opinion that the lower court's rulings on the plea and exceptions were correct, as was its judgment on the merits. And for these reasons, the judgment appealed from is affirmed, with costs.