STOKER, Judge.
This is an action by the holder of a crop pledge and privilege against the crop grower and a purchaser of a portion of the pledged crop. The primary issue in the case is whether the holder of the crop pledge gave proper notice to the purchaser where the crop pledge was given by the grower in the name of Boward Deville, and was recorded as such, although the purchaser dealt with the grower as, and knew him only as, Frank Deville.
Plaintiff-appellee, Evangeline Bank and Trust Company, is the crop pledge holder. It sued Frank Boward Deville and his wife and B. F. Trappey’s Sons, Inc. after Deville sold most of his crop to Trappey’s and failed to pay off his loan at the plaintiff bank *1253 which was secured by the crop pledge. The trial court found in favor of the plaintiff bank. The trial court also gave judgment to Trappey’s on a third-party petition it had brought against Deville. Deville and Trap-pey’s have appealed the trial court ruling.
FACTS
Frank Boward Deville was a grower of sweet potatoes. In order to finance a crop he borrowed $15,000.00 from the plaintiff bank. To secure the loan he gave a crop pledge on his expected crop in conformity with R.S. 9:4341 et seq. The pledge was duly recorded with the Evangeline Parish Clerk of Court. As the crop was harvested the sweet potatoes were sold to Trappey’s through a buyer, Lewis Savoy. Savoy had made a contract with Deville in the name of Frank Deville. In the previous year Savoy and Deville had dealt with one another without a contract in the name of Frank Deville. It appears that the bank officer-who dealt with Deville knew him only as Boward and Savoy, the only person at Trap-pey’s to deal with him, knew him only as Frank. The crop pledge was also signed by Deville’s wife, Anna Belle F. Deville. It was signed on behalf of the plaintiff bank by J. B. LaHaye, Vice President and was witnessed by two persons.
Frank Boward Deville harvested approximately $10,000.00 in potatoes which he sold as it was harvested to Trappey’s through Lewis Savoy. At this point Savoy discontinued purchases from Deville, and Deville abandoned the remainder of his crop. The bank harvested some additional portion of the crop. Deville then took bankruptcy and his debt to the bank was discharged in bankruptcy. Prior to trial Deville and his wife were eliminated as primary defendants on an exception based on the discharge in bankruptcy. This left Trappey’s as the sole defendant. The Devilles remained in the case as third-party defendants.
TRIAL COURT ACTION
The trial judgment awarded the Evangeline Bank and Trust Company the amount Trappey’s had paid to Deville which the court held was the sum of $10,823.00. The judgment also carried interest at the rate of 8% per annum from August 31, 1976, until paid plus attorney fees in the amount of twenty-five per cent on the amount due and cost of the suit. Judgment over against Deville was given in favor of Trappey’s for one-half of the amount it was obligated to pay to the bank by way of contribution.
The trial court’s reasoning, in part, was as follows:
The crop pledge contract was recorded on March 17, 1976, and the Court finds that it was properly recorded in accordance with R.S. 9:4341, Trappey had constructive notice of the crop pledge when it bought the potatoes from Mr. Deville. Mr. Savoy was clearly negligent in purchasing the potatoes without inquiring whether or not the crop was subject to a crop pledge.
******
Trappey and Frank Boward Deville are joint tort-feasors, and therefore, Trappey as third-party plaintiff, is entitled to recover from third-party defendant, Frank Boward Deville, one-half of the amount it is obligated to pay to the Evangeline Bank and Trust Company by the judgment rendered herein.
RESPECTIVE OBLIGATIONS OF CROP PLEDGE HOLDER AND BUYER
It will be noted from the portion of the judgment quoted above that the trial court regarded Trappey’s as negligent. It regarded Trappey’s and Deville as joint tort-feasors. Under appropriate findings of fact such a holding would be correct. Alexandria Production Credit Ass’n. v. Horn, 199 So. 430 (La.App. 2nd Cir. 1940), writ denied.
While it is true that Trappey’s made no inquiry to determine whether Deville’s crop was encumbered with a crop pledge, our view of the facts raises a substantial question as to whether the Evangeline Bank and Trust Company fulfilled its obligation to properly record the privilege so as to make effective the constructive notice provisions of the statute governing such privileges. With reference to that statute, R.S. 9:4341, this court made the following holding in *1254 City Bank and Trust Company v. Marksville Elevator Company, 221 So.2d 853 (La.App. 3rd Cir. 1969):
* * * When properly recorded, a crop pledge is effective against third persons, so that the immediate purchaser of a crop subject to it buys with constructive notice of the pledge, and is personally liable to the crop pledgee, or at least up to the value of the crop purchased by him..
Under the circumstances of this case the question arises: Is a crop pledge properly recorded where the pledge is given by the pledgor in his middle and surname or family name only, and which does not indicate his Christian or given name? Another way of stating the question is: Does a crop pledge in the name of Boward Deville, even recorded, give notice at all to anyone that it was given by Frank Deville?
Admittedly Trappey’s did not request a certificate from the Clerk of Court to determine if Frank Boward Deville had any crop pledges recorded in his name. Also it did not press Deville about his financial obligations to the point of actually asking him if he had given a crop pledge on the potatoes he sold to Trappey’s. Pertinent here is the observation of this court in Nunez v. Collins, 180 So.2d 553 (La.App. 3rd Cir. 1965). There this court approvingly cited Charrier v. Greenlaw Truck and Tractor Co., 2 La. App. 622 (1925) for the following language: “We think the force and effect of the records must depend on themselves and not on whether parties consult them or not. Without consultation they are binding for what they show. They should not be binding for what they do not show.” (Emphasis supplied.) While the factual situation in Nunez v. Collins, supra, was the reverse of that here, the reasoning equally applies.
Despite the constructive notice feature of the statute, it is manifest that a scrutiny and check of the Evangeline Parish crop pledge records would not have disclosed a crop pledge given by Frank Deville.
Plaintiff-appellee bank urges here that it was the duty of Trappey’s to have established the identity of Deville through a check of such identifying documents as his social security card or driver’s license. Further it is argued that since Deville’s wife signed the crop pledge, examination of the recorded crop pledge in the name of Frank Deville would have disclosed that Frank Deville, with whom Savoy was dealing, was in fact Boward Deville. We have concluded that when the relative obligations of the pledgee bank and the buyer of the pledge crop are analyzed, the obligation of the bank was greater than that of the buyer, or was at least of such a nature to constitute negligence on the part of the bank. Our considered view is that the plaintiff-appel-lee was solely at fault in not ascertaining the full name of Frank Boward Deville and so listing his name in the crop pledge contract.
According to some authorities, the middle name of a person’s middle initial is no part of a person's name. 65 C.J.S., Names, Section 4. See Wilty v. Jefferson Parish Democratic Executive Committee, 245 La. 145, 157 So.2d 718 (1963) quoting from the same authority to the effect that middle names and initials are held to be immaterial. Section 1 of 65 C.J.S. Names, page 3 states as follows:
By the common law, since very early times, a legal name has consisted of one Christian or given name, and one surname, patronymic, or family name, the given name being used first and the surname last.
On the other hand a full reading of Section 4 of the C.J.S. reference shows that a middle name may be a part of a person’s name, especially if it becomes important for identification purposes.
Other authority influencing our view are the requirements imposed on notaries in listing names of parties in documents and the obligations of recorders of mortgages in giving mortgage certificates where Christian names are not listed. The crop pledge in question here between the Evangeline Bank and Trust Company and Deville was not a notarial instrument. It was simply signed by the parties, including Mrs. De-ville, and witnessed by two persons. While the document on its face was not prepared *1255 by a Notary, nevertheless, R.S. 35:12 is indicative of the importance that the Legislature places on the inclusion of the full names of persons in legal documents.
R.S. 35:12 provides as follows:
Notaries shall insert in their acts the Christian names of the parties in full and not their initial letters alone, together with the permanent mailing addresses of the parties, and shall print or type the full names of the witnesses and of themselves under their respective signatures.
R.S. 9:5181 provides as follows:
Recorders of mortgages shall refuse their certificates to persons whose Christian names are not stated, or whose Christian names are designated by the initial letters alone.
We see no reason why a financial institution such as a banking house writing a contract of pledge to secure a loan of magnitude of $15,000.00 should not observe the same care as is prescribed for Notaries in confecting their acts. Thus plaintiff-appel-lee should have listed Deville in the crop pledge contract as Frank Boward Deville or at least as Frank Deville.
From the foregoing considerations we are of the opinion that the recorded crop pledge in question was not properly recorded in the sense that it did not give sufficient notice to third parties so as to be effective against them constructively or otherwise. Under the circumstances, we view the failure of Trappey’s to check the records, or to directly inquire of Deville as to whether there was a crop pledge affecting the purchased crop, to be immaterial.
With reference to the argument that since the crop pledge was signed by the wife of Deville, her name appearing as a party to the recorded contract, this should have constituted notice to Trappey’s and other third persons, our view is as follows. The contract itself does not categorically recite that Mrs. Deville was a primary party to the contract. The contract opens as follows: “THIS CONTRACT between The Evangeline Bank and Trust Company of the parish of Evangeline of the first part and Boward Deville of the same parish, as second part; WITNESSETH . . .”
After the essentials of the contract were stated, a final paragraph sets forth that Anna Belle F. Deville, wife of Boward De-ville also came and appeared, “who became a party to this act, and she, together with her husband, declared that they hereby waive as to this debt, and in favor of the said Evangeline Bank and Trust Company,” the homestead exemptions accorded them under certain laws. It would appear that Mrs. Deville’s joining in the contract was for the sole purpose of waiving the homestead exemption.
It is true that had Trappey’s examined the recorded contract in the name of Boward Deville, and had read it in its entirety, it would have been put on notice that the wife of the Deville who gave the pledge and privilege was the wife of the person it dealt with as Frank Deville. In view of the misleading action of the bank in listing the name of Deville as Boward rather than Frank, or Frank Boward, we are disinclined to impose upon the purchaser of the potatoes the burden of examining all crop pledges recorded in the surname of the pledgor to discover the names of the wives as might be listed in them.
For the foregoing reasons this court holds that the crop pledge in question was not properly recorded, and, under the circumstances, B. F. Trappey’s Son, Inc. was not given sufficient notice of the existence of the privilege and pledge of the Deville crop.
Accordingly the judgment appealed from is reversed both as to the principal demand and the third-party demand, and judgment is now rendered in favor of defendants, Frank Boward Deville and Anna Belle F. Deville, and against plaintiff, Evangeline Bank and Trust Company, rejecting plaintiff’s demands and dismissing its suit at its costs. The third-party demand of third-party plaintiff against third-party defendants is reversed and rejected and dismissed at the cost of the third-party plaintiff. The costs of this appeal are to be borne by plaintiff-appellee.
REVERSED AND RENDERED.