UNITED STATES of America, Plaintiff-Appellant,

v.

Charles R. WEEMS and Tresa C. Weems, Defendants,

and

Brown-Ellington Cotton Company, Inc., Downes Cotton Company, Inc., and Martin A. Hebert, d/b/a Warsaw Elevator, Defendants-Appellees.

No. 81–3555
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

July 9, 1982.
Rehearing Denied Sept. 16, 1982.

---

D. H. Perkins, Jr., Asst. U. S. Atty., Shreveport, La., Anthony J. Steinmeyer, John S. Koppel, Appellate Staff, Civ. Div., Dept. of Justice, Washington, D. C., for plaintiff-appellant.

Lancaster, Baxter & Seale, John T. Seale, Tallulah, La., Thompson, Sparks, Cudd & Dean, Robert C. Cudd, III, Monroe, La., for Martin A. Hebert.

Before GEE, GARZA and TATE, Circuit Judges.

GARZA, Circuit Judge:

The United States appeals the district court's decision below holding that crop dealers who purchased crops and negotiable warehouse receipts subject to duly recorded crop pledges in favor of the Farmers Home Administration were not liable for conversion. For the reasons stated below, we reverse and remand.

In 1976 and 1977, Charles R. and Tresa C. Weems of Winnsboro, Louisiana, executed three promissory notes secured by chattel mortgages and crop pledges in favor of the Farmers Home Administration (FmHA). Those security instruments were duly recorded in Franklin Parish pursuant to LSA–R.S. 9:4361. Despite the fact that Weems had pledged certain crops to the FmHA, he had no hesitancy in selling negotiable receipts for 27 bales of cotton to appellee Brown-Ellington Cotton Co., Inc., for $6,212.50, similar receipts for 48 bales of cotton to appellee Downes Cotton Co., Inc., for $10,749.56 and 1,549.25 bushels of soybeans to appellee Warsaw Elevator for $8,862.58. These crops were subject to the FmHA pledges and were made without the agency's required prior consent.

The individual who sold the crops to each purchaser listed above, identified himself as "Jack" Weems and gave his address as either Delhi or Baskin, Louisiana. This man expressly represented to employees of both Brown-Ellington and Downes that the crops which were subject to the negotiable warehouse receipts were not encumbered by any line or privilege.[1] He did not provide correct information, however; Jack Weems and Charles R. Weems are the same individual. Each of the three purchaser-defendants admitted receipt of a list of FmHA borrowers who had executed chattel mortgages and crop pledges for the 1977 crop year. All three failed to inquire whether Jack Weems and the Charles R. Weems listed were, in fact, the same individual.[2]

After Weems defaulted in the payment of his indebtedness to the FmHA, the government filed a suit for collection.

---

1. The third purchaser, Mr. Hebert d/b/a Warsaw Elevator, sought no assurance whatsoever from Weems concerning the status of the crops purchased.

2. Defendants point out that there was another farmer in the area named Charles R. Weems and that they assumed that he was the individual listed on the FmHA list. This fact provides no support for their defense, however. The

Weems subsequently filed a Chapter 7 bankruptcy petition and received a general discharge.[3] Subsequently, the government filed this suit, charging the three purchasers with conversion. An *in rem* action against any of Weems' property disclaimed by the receiver in the bankruptcy proceedings, was also included in the complaint. Although the court below granted the requested *in rem* judgment, it dismissed the conversion action for the stated reason that "the government's loss, if any, was not caused by any 'fault' of the defendants, but by the fraudulent acts of Weems." Record on Appeal, vol. 1, at 206. The court stated further that "[t]he court limits its holding to the facts of this case, where the seller gives fraudulent, false information to immediate purchasers *such that the purchasers cannot reasonably be expected to ascertain his identity as the one who pledged the crops which are offered for sale.*" (emphasis in original). Record on Appeal, vol. 1, at 206. It is from this judgment that the government appeals.

The essence of the offense of conversion is "[a]n unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the ... exclusion of the owner's rights." Black's Law Dictionary 402 (rev'd 4th ed. 1968). Although a lack of due care on the parts of the three purchasers does appear clear from the record of this case, the intent or good faith of these purchasers is irrelevant in a conversion action. The only issue to be addressed, therefore, is the validity of the crop pledge on which FmHA bases its action.

■■■ As the court below recognized, "[i]t is well-settled law in Louisiana that a crop pledge, when properly recorded,

is effective against third persons, so that the immediate purchaser of a crop subject to it buys with constructive notice of the pledge, and is personally liable to the crop pledgee, or at least up to the value of the crop purchased by him.

*City Bank & Trust Co. v. Marksville Elevator Co.,* 221 So.2d 853, 855 (La.App. 3d Cir. 1969); *Alexandria Production Credit Assn. v. Horn, supra* [199 So. 430 (La.App. 1940) ]." Record on Appeal, vol. 1, at 204. In his memorandum ruling, the district judge found that the crop pledges were properly recorded pursuant to Louisiana law. Record on Appeal, vol. 1, at 203. We find no error in that conclusion. The pledge was, after all, recorded in the pledgor's full name, as required by Louisiana law. *Evangeline Bank and Trust Co. v. Deville,* 367 So.2d 1252, 1253–55 (La.App. 1979).[4] It was recorded in the parish of the pledgor's residence. Therefore, it was effective and the defendants did convert the crops involved.

The court below found no conversion in this case because of its interpretation of past conversion cases as requiring fault or negligence on the part of purchasers. However, the following quote from the case of *Alexandria Production Credit Assn. v. Horn,* 199 So. 430 (La.App.1940), clearly demonstrates that the state court intended to hold the purchaser of crops encumbered by a duly recorded crop pledge would be liable to the pledgee even if he did not actually know of the pledge.

Registry is a creature of necessity. When done pursuant to legal requirement there flows therefrom definite results other than the bare perpetuation of the

---

Charles R. Weems of their acquaintance farmed in a different parish. A search of the record of Franklin Parish would have disclosed another Charles R. Weems, about whom they should have inquired.

**3.** Although it is of no moment for this case, we note that the government asserts that it did not attempt to except the FmHA indebtedness from the Weems' discharge because of the belief that the debt could not be collected from either Charles R. or Tresa C. Weems.

**4.** In light of the fact that there are no Louisiana Supreme Court cases which decide the issues relevant to this case, we rely on the words of the Louisiana Courts of Appeals in this opinion. See *Kincaid Cotton Co., Inc. v. Kesey Bros.,* 504 F.2d 976, 978 (5th Cir. 1974); *see also Continental Grain Co. v. Martin,* 536 F.2d 592, 593 (5th Cir.), *cert. denied,* 429 U.S. 1024, 97 S.Ct. 643, 50 L.Ed.2d 625 (1976).

record of the instrument. From the very nature of such matters this is as it should be. Third persons, without actual knowledge, are constructively held to know of the registry of instruments and their contents. They are presumed to understand the significance of the registry of a particular document, the contents thereof, and the flow of legal effect therefrom. If this were not true, little comfort and meager benefits and protection would follow the act of registry.

The act of 1874 and the amendment specifically provide that when the written instrument therein described is recorded, that fact alone would confer upon the furnisher of supplies "a right of pledge upon said crops," etc. The contract of pledge, its nature and significance, find an important place in our system of laws. It is of the essence of such a contract that possession, actual or fictive, in the pledgee be present to effectively give rise to it.

From the foregoing premise, it follows that all persons, including the defendant, were impressed with knowledge of the existence of the pledge of crops and recorded lien by Horn to plaintiff to enable him to secure advances indispensable to their production, and that such crops were in the possession of Horn as plaintiff's trustee; and in dealing with him, in these circumstances, defendant assumed the risk involved and for all legal intents and purposes, became a joint tortfeasor with Horn in disposing of the cotton. *Id.* at 433. In the other case where the district court read a requirement of negligence on the purchaser's part, enforcement of the pledge was denied simply because it was not recorded in the pledgor's Christian name. *Evangeline Bank and Trust Co. v. Deville, supra.*

The district court expressed concern that "a ruling against the defendants in this case would expose crop purchasers or dealers in warehouse receipts to almost limitless risks

from fraudulent activities perpetrated by dishonest sellers." Record on Appeal, vol. 1, at 206. We are unable to concur in this reasoning. Instead, we find our views expressed in the following words from *Alexandria Production Credit Assn. v. Horn, supra*:

> If the law were such as contended by intervener, the furnishing of supplies would be a very hazardous business, for it would be a very easy matter for the producer to deposit his goods in a warehouse and negotiate the receipts, or dispose of them in a way to defeat the furnisher's lien.

*Id.* at 433.

Since we find that the crop pledges at issue were properly recorded and that the three defendants purchased crops subject to these pledges without permission of the FmHA, we are constrained to reverse the judgment of the district court and remand for further proceedings not inconsistent with this opinion.[5]

REVERSED AND REMANDED.

---

5. Defendants raise a number of other issues on appeal which were not challenged in the trial court. This Court ordinarily does not decide issues which were not presented first in the district court. We find no reason to depart

from this rule in the instant case since we are not confronted with "pure questions of law when a refusal to view the merits will result in a miscarriage of justice." *United States v. Ayers*, 615 F.2d 658, 660 (5th Cir. 1980).